**LEXINGTON INSURANCE COMPANY,**
**Appellant/Cross–Appellee–**
**Defendant,**

v.

**AMERICAN HEALTHCARE PROVID-**
**ERS, et al., Appellee/Cross–Appel-**
**lant–Plaintiff.**

**No. 49A02–9208–CV–354.**

Court of Appeals of Indiana,
Second District.

Sept. 13, 1993.

John D. Nell, Julie L. Michaelis, Wooden McLaughlin & Sterner, Indianapolis, for appellant/cross-appellee-defendant.

Frederick J. Ball, Timothy G. Kline, Goodman Ball & Van Bokkelen Professional Corporation, Highland, for appellee/cross-appellant-plaintiff. ·

FRIEDLANDER, Judge.

## CASE SUMMARY

Defendant-appellant/cross-appellee Lexington Insurance Company (Lexington) and plaintiffs-appellees/cross-appellants American Healthcare Providers, Inc. d/b/a American HMO (American), Asif Sayeed (Sayeed), Ramesh Joshi (Joshi), and David Lutz (Lutz) (collectively referred to as Plaintiffs) appeal from the denial of their respective motions for summary judgment in the Plaintiffs' declaratory judgment action against Lexington.

We affirm the denial of the Plaintiffs' motions for summary judgment, reverse the denial of Lexington's motion for summary judgment, and remand this cause to the trial court with instructions that it enter summary judgment for Lexington.

## FACTS

The relevant facts reveal that Sayeed, Joshi and Lutz were either officers, directors, employees or agents of both American, an Illinois corporation, and Physician's Choice of Northwest Indiana, Inc. (PCNI), an Indiana corporation. American and PCNI are pre-paid health maintenance organizations. Both American and PCNI obtained directors and officers liability insurance from Lexington.

PCNI was formed in 1985 and its stock was owned by Comprehensive Healthcare Utilization Alternatives, Inc. (CHUA), an Indiana Corporation. In January, 1987, PCNI and CHUA entered into a management agreement with American which provided that American would provide PCNI with all management services and operational staffing necessary for its operation in return for a percentage of PCNI's net premium. CHUA also entered into a contract for sale with American which granted American rights to purchase a total of eighty percent (80%) of CHUA's stock by exercising options pursuant to the terms contained therein. The contract for sale also provided that American agreed it would be responsible for funding any operating deficits of CHUA or PCNI from the date of the execution of the contract through the date it exercised its first option. American managed PCNI in accordance with the management agreement, however, it did not timely exercise either of its options to purchase CHUA's shares. Pursuant to the agreements, American appointed several of its officers or directors as officers or directors of PCNI.

Financial difficulties plagued PCNI, and in December, 1988, a petition for the rehabilitation of PCNI was filed in the Marion Circuit Court. In February, 1989, a petition for the liquidation of PCNI was filed in the same court and the acting commissioner of the Indiana Department of Insurance was appointed Liquidator of PCNI.

On October 11, 1989, PCNI's Liquidator filed two lawsuits. The first action (Lawsuit A) named Sayeed, Lutz [1] and nine other directors (the Director Defendants) of PCNI as defendants to a claim for breach of fiduciary duties owed to PCNI. The second action (Lawsuit B), comprised of three counts, was filed against the Plaintiffs. The first count of Lawsuit B alleged that American had obtained preferential transfers from PCNI totaling almost $700,-000 when American knew PCNI was insolvent, and sought to recover those transfers. The second count was a claim against Sayeed, Joshi and Lutz alleging that, while acting on behalf of PCNI, they participated in the preferential transfers and that they were personally liable for the

---

1. Contrary to the parties' apparent belief, Joshi   was not a party to Lawsuit A.

amount of the preferences. The third count of the complaint alleged that American had violated its management agreement with PCNI by failing to provide certain services and that it had violated the contract of sale by failing to fund PCNI's operating deficits.

On April 16, 1990, the Plaintiffs filed a complaint for declaratory judgment against Lexington, claiming that Lexington owed them a duty to defend in the suits and indemnify them and the Director Defendants from any judgment rendered in Lawsuit A or B all pursuant to PCNI's and American's insurance policies with Lexington. The Director Defendants filed a separate declaratory judgment action in the Newton Circuit Court which was consolidated with the Plaintiffs' action.

On December 20, 1991, the Plaintiffs and the Director Defendants settled all claims asserted by the Liquidator in Lawsuits A and B. On December 23, 1991, Lexington filed its motion for summary judgment. On February 28, 1992, the Plaintiffs responded to Lexington's motion and filed a cross-motion for summary judgment. After a hearing on the motions, the trial court denied Lexington's motion on June 23, 1992 and denied the Plaintiffs' motion on August 18, 1992. The trial court certified each denial for interlocutory appeal, and this court accepted jurisdiction.

## ISSUE

Whether the Plaintiffs and Director Defendants are entitled to coverage under either PCNI's or American's policy.

## DECISION

*PARTIES' CONTENTIONS*—Lexington argues that coverage is precluded under both policies because each policy excluded claims relating to the insolvency or liquidation of any person, including claims asserted by liquidators of insurers or Commissioners of Insurance. The Plaintiffs mount a three-pronged attack on the exclu-

sion, challenging it as being ambiguous, contrary to public policy and inapplicable because they did not receive notice of its provisions.

*CONCLUSION*—As the policies do not cover any of the claims asserted against the Plaintiffs or the Director Defendants,[2] the trial court should have entered summary judgment in Lexington's favor, and we affirm as to the trial court's denial of the Plaintiffs' cross-motions for summary judgment.

The pertinent provision in each policy, Exclusion Q, excludes from coverage:

> "*Claims* based upon, arising out of, due to or *involving* directly or indirectly *the insolvency,* receivership, bankruptcy, *liquidation* or financial inability to pay *of* any Insured, any Insurer or *any other person, including Claims brought by* any insurer guarantee or insolvency fund or *any* receiver or *liquidator of any insurer or any Commissioner* or Superintendent *of Insurance.*"

*Record* at 193 (emphasis supplied).

■ When interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the contract for insurance. *American Family Mut. Ins. Co. v. National Ins. Assoc.* (1991), Ind.App., 577 N.E.2d 969. We will not extend coverage beyond that provided in the contract and we may not rewrite the plain and unambiguous language of the insurance policy. *Id.; Landis v. American Interinsurance Exch.* (1989), Ind.App., 542 N.E.2d 1351, *trans. dismissed.*

■■ If the policy language is clear and unambiguous, it should be given its plain and ordinary meaning. *Tate v. Secura Ins.* (1992), Ind., 587 N.E.2d 665; *Eli Lilly & Co. v. Home Ins. Co.* (1985), Ind., 482 N.E.2d 467, *cert. denied* 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 991. An insurance policy will be considered ambiguous only if reasonable persons upon reading the contract would differ as to the meaning of its terms, and an ambiguity is not established

---

**2.** Because we conclude the liquidation exclusion in both policies unambiguously excludes coverage, we need not consider the parties' conten- tions concerning the application of other provisions of either policy.

merely because one party controverts another party's interpretation of the policy. *Meridian Mut. Ins. Co. v. Cox* (1989), Ind. App., 541 N.E.2d 959, *trans. denied.*

Further, as Lexington is appealing from the denial of its motion for summary judgment, it bears the burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Jordan v. Deery* (1993), Ind., 609 N.E.2d 1104. When reviewing the trial court's ruling on a motion for summary judgment, we consider the evidence designated to the trial court by the parties in the light most favorable to the nonmoving party. *Rosi v. Business Furniture Corp.* (1993), 615 N.E.2d 431.

■■■ The provisions of an insurance contract are subject to the same rules of interpretation and construction as other contracts, and summary judgment based upon the construction of a contract is a determination, as a matter of law, that the contract is not so ambiguous that resort must be made to extrinsic evidence in order to ascertain the contract's meaning. *Cox, supra.* As the construction of a contract is a question of law, summary judgment is particularly appropriate when the terms of the contract are unambiguous. *Bicknell Minerals, Inc. v. Tilly* (1991), Ind.App., 570 N.E.2d 1307, *trans. denied.*

### I. Ambiguity

■■ The Plaintiffs first assail Exclusion Q as being ambiguous. The Plaintiffs attempt to bolster their position by relying on several federal cases which construed regulatory exclusions to directors and officers' liability insurance policies issued to failed financial institutions. *See American Casualty Co. v. Federal Savings and Loan Ins. Corp.* (E.D.Ark.1989), 704 F.Supp. 898; *American Casualty Co. v. Federal Deposit Ins. Corp.* (N.D.Iowa 1987), 677 F.Supp. 600. Lexington counters by pointing out that such exclusions are not uniformly considered to be ambiguous. *See American Casualty Co. v. Baker* (C.D.Cal.1991), 758 F.Supp. 1340; *Gary v. American Casualty Co.* (W.D.Okla.1990), 753 F.Supp. 1547. However, the regulatory exclusions consid-

ered in those cases are significantly different from the exclusion before us. Because of the difference in the applicable policy language, we conclude the federal decisions offer little support for the Plaintiffs' argument.

Lexington relies on *Barron v. Scaife* (1988), La.App., 535 So.2d 830. In *Barron,* the court considered an insurer insolvency endorsement which excluded from coverage claims "arising from or related to" the insolvency or liquidation of any insurance company. *Id.* at 832. The court concluded the exclusion was unambiguous:

> "The claim that Tri–State intentionally failed to inform its insured of the insolvency of Texas Fire and Casualty by its very wording is related to the insolvency of the insurance company, as without the insolvency of Texas Fire, there would be no claim. We can find no alternative interpretation of the language."

*Id.* at 832–33.

And so it is here. We conclude Exclusion Q unambiguously applies to the lawsuits filed by the Liquidator. The claims in Lawsuits A and B unquestionably involved the insolvency and liquidation of another person (PCNI), and they were brought by the liquidator of an insurer, who is also the Commissioner of Insurance. Since Exclusion Q excludes from coverage claims involving the insolvency or liquidation of any other person, including claims brought by the liquidator of any insurer or a Commissioner of Insurance, it is apparent from the plain language of both policies that the Liquidator's claims are excluded. Exclusion Q is broadly written to exclude any claims involving any insolvency or liquidation.

Just as in *Barron,* the Liquidator's claims in Lawsuit B relating to preferential transfers would not exist outside of PCNI's liquidation, so those claims must "involve" PCNI's liquidation. Further, the claims in Lawsuit A that Sayeed, Lutz and the Director Defendants breached their fiduciary duties to PCNI by "failing to take appropriate action to preserve and protect the assets of PCNI then in existence after the

defendants knew or should have known of the deteriorating financial condition of PCNI," *record* at 117, at the very least, involve PCNI's insolvency. Thus the plain language of the policy, given its ordinary meaning, excludes coverage.

The Plaintiffs' proffered construction of Exclusion Q is that it "solely contemplates claims of mishandling or mismanagement by the Liquidator. Clearly those types of claims are excluded, and rightly so, since the Liquidator could not be allowed to mismanage or mishandle the estate and then make a claim against an insurance policy based on his own mismanagement." *Appellees' brief* at 30.

We can find no support in Exclusion Q for the Plaintiffs' belief that the exclusion relates only to claims concerning the Liquidator's mismanagement of PCNI's assets. We cannot accept the Plaintiffs' strained reading of Exclusion Q. The Liquidator is not an insured under the policy, and there is nothing in either policy which logically suggests that claims *against* a Liquidator would be covered by the policy unless specifically excluded. Further, as the policy broadly excludes claims involving the insolvency or liquidation of any other person, it is illogical to read the exclusion as applying to claims against liquidators of unrelated entities.

The Plaintiffs also raise other various concerns about the policy language, most of which stem from their misinterpretation of the insurance policies.

Their assertions relating to the timing of the occurrences upon which the Liquidator's claims are made fail to consider the explicit language of the policies. The insuring clauses of both Directors & Officers Liability Endorsements state that Lexington will pay for losses "arising from any claim or claims which are first made ... during the policy period by reason of any Wrongful Act...." *Record* at 137, 184.

The timing of the "Wrongful Act," then, is not relevant to coverage so long as the *claim* based on the Wrongful Act is brought during the policy period.[3] Therefore, the fact that the actions alleged in the Lawsuits A and B occurred prior to PCNI's insolvency and liquidation is of no moment.

The Plaintiffs' assertion that the policy did not "exclude claims brought for acts 'prior to,' 'predating,' or 'before' an insolvency or liquidation, or which 'lead to' or 'cause' an insolvency or liquidation," *appellees' brief* at 29, has no merit. The language of the insuring clauses, as modified by the explicit time limits contained in the policies, extends coverage if the *claims* based on those prior acts are made during the policy period. Exclusion Q excludes those claims if they involve an insolvency or liquidation. Since acts which "lead to" or "cause" an insolvency or liquidation also "involve" an insolvency or liquidation, giving those terms their plain and ordinary meanings, claims based on those acts would be excluded by Exclusion Q. The policies therefore unambiguously exclude from coverage claims brought for acts prior to, predating, or before an insolvency or liquidation which lead to or cause an insolvency or liquidation.

The Plaintiffs' contention that "a legitimate claim could never be brought for events predating the liquidation," *appellees' brief* at 32, pursuant to Lexington's interpretation of the policy is also without merit. So long as the claim does not involve an insolvency or liquidation, nothing in Exclusion Q would preclude coverage. Valid claims are not forfeited, as suggested by the Plaintiffs, if the claims are unconnected to an insolvency.

At oral argument, held on April 13, 1993, the Plaintiffs argued that Exclusion Q was ambiguous because the term "claim" was not defined. In their appellate brief, how-

---

**3.** Each policy contained some limitation on the timing of Wrongful Acts. In PCNI's policy, the limitation is found in an addition to the Directors & Officers Liability Endorsement (Endorsement No. D–1–B), which provides: "Notwithstanding any language in this policy to the contrary, this endorsement does not cover claims arising from or attributable to or based on any act(s) committed or alleged to have been committed prior to: 10/16/85[.]" *Record* at 194. A somewhat similar limitation is included in the insuring clauses of American's Directors and Officers Liability and Corporation Reimbursement Endorsements. *Record* at 135, 137.

ever, the Plaintiffs acknowledged that "[p]ursuant to Lexington's policy, a 'claim' is defined as a written demand seeking damages." *Appellees' brief* at 30. We believe that the failure to define "claim" in Exclusion Q does not render the exclusion ambiguous.

The Plaintiffs essentially ask us to rewrite the insurance contracts in their favor, which we cannot do. Because the Liquidator's claims in Lawsuits A and B "involve" PCNI's insolvency and liquidation, giving that term its plain and ordinary meaning, the language in Exclusion Q, which is included in both American's and PCNI's policies, unambiguously excludes from coverage Lexington's liability for those claims.

## II. Public Policy

■ The next prong of the Plaintiffs' offensive is their contention that Exclusion Q violates public policy. Ordinarily, an insurance company may limit its liability in any manner not inconsistent with public policy, so an unambiguous exclusionary clause is generally entitled to enforcement. *City of Muncie v. United Nat. Ins. Co.* (1991), Ind.App., 564 N.E.2d 979.

■ When we are asked to invalidate a contract provision on public policy grounds, we must always weigh in the balance the parties' freedom to contract. *Allstate Ins. Co. v. Boles* (1985), Ind., 481 N.E.2d 1096. Absent contrary legislation, there is usually no public policy which prevents parties from contracting as they see fit. *Stone v. Manship* (1987), Ind.App., 505 N.E.2d 155; *Center Township of Porter County v. City of Valparaiso* (1981), Ind. App., 420 N.E.2d 1272, *trans. denied.* Only in cases which are substantially free from doubt will we exercise our power to declare a contract void as contravening public policy. *Tolliver v. Mathas* (1989), Ind.App., 538 N.E.2d 971, *trans. denied.* As our supreme court observed in *Corns v. Clouser* (1894), 137 Ind. 201, 36 N.E. 848:

> "the power to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a

statute unconstitutional, should be exercised only in cases free from doubt." *Id.* at 204, 36 N.E. at 849, *quoting Richmond v. Dubuque R.R. Co.* (1868), 26 Iowa 191, 202. *See also American Underwriters, Inc. v. Turpin* (1971) 149 Ind.App. 473, 273 N.E.2d 761.

The Plaintiffs again turn to the federal decisions relating to failed financial institutions to support their claim that Exclusion Q should be contrary to public policy. *See Branning v. CNA Ins. Co.* (W.D.Wash. 1989), 721 F.Supp. 1180; *Federal Savings and Loan Ins. Corp. v. Oldenburg* (C.D.Utah 1987), 671 F.Supp. 720. And Lexington again points out that federal decisions regarding whether the regulatory exclusions violate public policy are not unanimous. *See Gary, supra.* One court observed that holding such regulatory exclusions as not being ambiguous or against public policy was in line with the vast majority of courts that have considered such exclusions. *American Casualty Co. v. Federal Deposit Ins. Corp.* (8th Cir.1991), 944 F.2d 455.

The federal district court in *Gary* explained that when directors and officers liability insurance is not required by statute, so that a complete failure to have any directors and officers coverage whatsoever could not be considered to be contrary to public policy, then policies providing only limited coverage could not logically be considered to be contrary to public policy. The same rationale is also applicable here.

The Plaintiffs have cited no legislation which prohibits Exclusion Q or which requires companies to maintain directors and officers liability insurance. The Plaintiffs seek aid from a provision in Ind.Code 27–1–13–7 (1988), which requires certain personal injury or property damage insurance policies to contain a provision preventing the insolvency or bankruptcy of an insured from releasing an insurance carrier, and a provision of federal bankruptcy law, 11 U.S.C. § 365(e), which prevents the termination or modification of executory contracts or unexpired leases because a debtor files for bankruptcy protection.

The Plaintiffs admit that these provisions are not applicable here, *appellees' brief* at 37, 42, but they nonetheless exhort us to extend the policies underlying those provisions to void Exclusion Q. The Plaintiffs' request is better addressed to the General Assembly, as the legislature is the arbiter of public policy in this state. *Board of Trustees of the Pub. Employees' Retirement Fund v. Hill* (1985), Ind., 472 N.E.2d 204; *Hamblen v. Danners, Inc.* (1985), Ind. App., 478 N.E.2d 926.

The Plaintiffs point out that PCNI's Directors and Officers Liability Endorsement provides that: "Bankruptcy or insolvency of the Insureds or of the Insureds' estate shall not relieve the Insurer of any of its obligations hereunder." *Record* at 188. This clause, however, does not buttress the Plaintiffs' position, as Lexington was not obligated under the policy to provide coverage due to Exclusion Q.

Further, as Lexington argues, the term "Insureds," as used in PCNI's Directors and Officers Liability Endorsement, encompasses only the directors and officers of PCNI, not PCNI itself. The insuring clause provides that directors and officers are referred to as the "Insureds" and that PCNI, because it is the company named in the declarations, is referred to as the "Company." *Record* at 184. Reading all of the policy's provisions together, the bankruptcy clause provides that the mere fact of the insolvency or bankruptcy of one of the directors or officers does not automatically end coverage, but that claims *involving* a directors' or officers', or any other persons', insolvency are not covered. In any event, that policy provision does not provide any support for the Plaintiffs' contention that Exclusion Q violates public policy.

The Plaintiffs also contend that Exclusion Q is contrary to public policy because it renders coverage under Lexington's policies illusory. We cannot agree. Coverage under an insurance policy is not illusory unless the policy would not pay benefits under any reasonably expected set of circumstances. *See Meridian Mut. Ins. Co. v. Richie* (1989), Ind., 544 N.E.2d 488.

Since Exclusion Q does not apply to claims which do not involve insolvency or liquidation, it is easily conceivable that PCNI could have benefited from the directors and operators insurance endorsement. Not all claims asserted against officers and directors of corporations involve an insolvency or liquidation, so the policy was not illusory. *See Id.*

The Plaintiffs next ask that we uphold their "reasonable expectations" in purchasing directors and officers liability insurance. The Plaintiffs' reasonable expectations argument, however, is more appropriately directed at either the issue of the correct interpretation of policy language or whether policy language is ambiguous. Our supreme court recognized in *Eli Lilly, supra,* that one rule of *interpretation* is that the courts should strive to give effect to the reasonable expectations of the insured.

We reject the Plaintiffs' claim that Exclusion Q eliminates the dominant purpose of directors and officers insurance. Not all companies become insolvent or liquidate, and not all claims involve someone's insolvency or liquidation. The Plaintiffs have provided no authority to support their implicit contention that companies purchase directors and officers liability insurance primarily to protect their directors and officers from liability during insolvency or troubled financial times.

Further, as we have determined that Exclusion Q is unambiguous, we conclude that no insured could reasonably expect the policy to provide coverage for the types of claims asserted in Lawsuits A and B. In short, an insured cannot purchase an insurance policy which explicitly excludes claims involving insolvency and reasonably expect the policy to cover claims involving insolvency. The Plaintiffs have not directed us to any case in which a court has decided to void an unambiguous insurance policy provision because the provision was inconsistent with the insured's alleged expectations, and we decline to do so here.

The Plaintiffs also argue that "the policy and parties meant to cover and indemnify

all 'wrongful acts' as broadly defined in the insuring clause and not exclude the protection provided by the policy." *Appellees' brief* at 37. As PCNI's Directors and Officers Liability Endorsement, as supplemented, contained seventeen specific exclusions, we cannot read the endorsement as covering all wrongful acts without exclusion. The Plaintiffs' argument to the contrary is simply hyperbole.

Because the Plaintiffs have not demonstrated that any legislation prohibits the use of Exclusion Q, or that companies are required to maintain expansive directors and officers liability insurance policies, we must conclude that the Plaintiffs have failed to establish that Exclusion Q violates public policy and should be voided.

### III. Notice

■ The final salvo of the Plaintiffs' barrage against Exclusion Q is their claim that a genuine issue of material fact exists as to whether they were properly notified about the presence of Exclusion Q in PCNI's renewal policy.[4] The Plaintiffs ask that we adopt the general rule followed in other states which requires insurers to notify insureds about changes in coverage when insurance policies are renewed. *See generally* Annot., 91 A.L.R.2d 546 (1963).

■ The general rule imposes a duty on insurers to notify insureds of policy changes, reasoning that insureds can presume that the renewal of an insurance policy will be on the same terms as previously agreed unless they are specifically notified otherwise. *See Fields v. Blue Shield of California* (1985), 163 Cal.App.3d 570, 209 Cal.Rptr. 781; *Canadian Universal Ins. Co. v. Fire Watch, Inc.* (1977), Minn., 258 N.W.2d 570; *Hester v. American Family Mut. Ins. Co.* (1987), Mo.App., 733 S.W.2d 1; Annotation, *supra.*

Even if we accepted the Plaintiffs' argument and imposed upon Lexington a duty to notify its insureds of changes in policy coverage, the record demonstrates that

Lexington adequately discharged that duty. The record reflects that Lexington's agent, Alexander & Alexander, sent a letter to PCNI's agent, MacLennan & Bain, which provided that additional exclusions were included in the new policy, and enclosed copies of the new exclusions. *Record* at 712, 749.

We conclude that letter was sufficient to notify PCNI of the changes in the policy's coverage. While the Plaintiffs complain that the letter did not summarize the insolvency exclusion, as it summarized other exclusions, they have not provided us with any authority suggesting that such a summary was required as a matter of law. As the letter pointed out that the new policy was supplemented with additional exclusions and as it was accompanied by copies of those additional exclusions, we fail to see how such notice could be considered inadequate.

■ Plaintiffs also contend that a genuine issue of fact exists as to whether MacLennan & Bain was PCNI's agent, so summary judgment was not appropriate because, considering the evidence in a light most favorable to them (the nonmoving parties), the notice to MacLennan & Bain did not constitute notice to PCNI. We cannot agree that a genuine issue of material fact exists as to MacLennan & Bain's status.

The evidence designated by Lexington demonstrates that the vice president of Alexander & Alexander, John Powel, Jr. (Powel), was the individual involved with the purchase of PCNI's policy, and that John MacLennan was the only person acting on behalf of PCNI with whom Powel had any contact concerning the policy. *Record* at 711–13. All communication concerning PCNI's policy was between Alexander & Alexander and MacLennan & Bain. *Record* at 715–18, 729–31, 735–38, 749–56. Both PCNI's former attorney, George Carberry, and Joshi, the executive responsible for obtaining insurance for PCNI, testified

---

**4.** The Plaintiffs have not specifically challenged the presence of Exclusion Q in American's policy, and as their arguments are based on facts developed for their argument as to the notice

provided to PCNI, we conclude that no issue has been raised concerning the applicability of Exclusion Q in American's policy.

at their depositions that MacLennan & Bain was PCNI's agent for procuring insurance. *Record* at 764–65, 781, 803. Nothing in the record shows that Lexington ever had any contact with MacLennan & Bain or that PCNI had any contact with Alexander & Alexander. The only reasonable inference that can be drawn from the designated evidence is that Alexander & Alexander acted as Lexington's agent for selling insurance and that MacLennan & Bain acted as PCNI's agent for procuring insurance.

The Plaintiffs have not pointed us to any designated evidence to contradict the inference raised by Lexington. They instead rely on *Aetna Ins. Co. of The Midwest v. Rodriguez* (1988), Ind., 517 N.E.2d 386, for the proposition that insurance brokers are considered agents of the insurer and not the insured. The Plaintiffs' reliance on *Aetna* is misplaced.

Our supreme court in *Aetna* observed: "when a broker makes application for insurance and the insurance policy is issued, the broker is the agent of the insurer and can bind it within the scope of his authority." *Id.* at 388. However, the supreme court had before it a situation in which only one agent was involved with the procurement of insurance. Here, MacLennan & Bain did not make an application for insurance to Lexington, the application was made by Alexander & Alexander. Alexander & Alexander offered the renewal of PCNI's policy to MacLennan & Bain. *Record* at 750. Further, it was Alexander & Alexander who bound Lexington, not MacLennan & Bain. *Record* at 754. PCNI's application for insurance was printed by Alexander & Alexander. *Record* at 768. MacLennan & Bain's letter to PCNI provided that it was delivering PCNI's policy. *Record* at 804.

Because MacLennan & Bain did not make an application for insurance to Lexington and as they did not bind coverage for Lexington, we conclude that the Plaintiffs have not demonstrated that the general rule announced in *Aetna* is applicable here. The Plaintiffs have not created a genuine issue of material fact as to MacLennan & Bain's status because they did not present any evidence regarding MacLennan & Bain's status to rebut the inference arising from Lexington's evidence.

From the evidence designated by the parties, we must conclude that MacLennan & Bain was acting as PCNI's agent, so the notice of the change in coverage provided to MacLennan & Bain was sufficient to constitute notice to PCNI, as the knowledge of an agent acting within the scope of his authority is imputed to the principal. *Prudential Ins. Co. of America v. Winans* (1975), 263 Ind. 111, 325 N.E.2d 204; *Metropolitan Life Ins. Co. v. Henry* (1940), 217 Ind. 33, 24 N.E.2d 918. Because PCNI was provided with sufficient notice, we need not consider the Plaintiffs' arguments concerning what PCNI would have done if it had elected not to renew the insurance policy with Lexington.

### IV. Conclusion

We conclude that Exclusion Q in both American's and PCNI's policies unambiguously applies to exclude coverage for the Liquidator's claims in both Lawsuits A and B, that the exclusion is not contrary to public policy and that PCNI was given adequate notice of the inclusion of Exclusion Q. Neither American's nor PCNI's Directors and Officers Liability Endorsement nor American's Corporation Reimbursement Endorsement provides coverage for the Liquidator's claims against the Plaintiffs or the Director Defendants, so the trial court erred when it denied Lexington's motion for summary judgment.

The trial court's denial of summary judgment on behalf of the Plaintiffs is affirmed, the denial of summary judgment with respect to Lexington is reversed, and this cause is remanded to the trial court with instructions that summary judgment be entered in favor of Lexington.

SHARPNACK, C.J., and NAJAM, J., concur.