2016 IL App (1st) 150919

FIRST DIVISION
May 23, 2016

No. 1-15-0919

| | | |
|---|---|---|
| CINCINNATI INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 10 CH 10888 |
| | ) | |
| ARNOLD CHAPMAN and C.T. PHOENIX OF | ) | |
| INDIANA, INC., | ) | Honorable |
| | ) | Rita M. Novak, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Cunningham and Justice Connors concurred in the judgment
 and opinion.

**OPINION**

¶ 1     This appeal involves the current action now before the court, and an underlying lawsuit involving the Telephone Consumer Protection Act (TCPA) (47 U.S.C. § 227 *et. seq.* (2006)).  In 2008, Arnold Chapman brought a class action lawsuit against Cincinnati Insurance Company's (Cincinnati) insured, C.T. Phoenix of Indiana, Inc. (Phoenix), for violating the TCPA.  Cincinnati denied coverage to Phoenix based on an exclusion added when the policy was renewed in 2006.  Chapman and Phoenix settled the underlying matter for $4.9 million.  Chapman then sought to recover from Phoenix's insurer, Cincinnati.  Cincinnati instituted this action for a determination of its rights and obligations under the insurance agreement with Phoenix.  After the close of discovery, both parties moved for summary judgment.  The parties

disagreed about which state's law would govern the insurance agreement between Cincinnati and Phoenix. After briefing, the circuit court determined there was no conflict between Indiana and Illinois, and therefore Illinois's law, as the forum state, would apply. Based on the application of Illinois law, the circuit court found that Cincinnati failed to provide 30 days' advance notice of the new exclusion and therefore the exclusion was invalid. Based on the invalidity of the exclusion, the circuit court entered summary judgment in favor of Chapman. This appeal followed.

¶ 2    Before this court, Cincinnati raises the following issues: (1) whether the circuit court erred in finding that no conflict exists between Illinois and Indiana regarding the notice required when an exclusion is added to an insurance policy at the time of renewal; (2) whether there is a conflict between Indiana and Illinois regarding application of estoppel when an insurer fails to defend an action; and (3) whether the circuit court's decision violated the fundamental fairness test of constitutional due process.

¶ 3    We hold that there is an actual conflict between the notice required under Illinois and Indiana laws when a new exclusion is added to an insurance policy upon renewal. After determining that an actual conflict exists, we find that the relevant factors require the use of Indiana laws to determine whether the exclusion can be invoked to deny coverage to Phoenix. Accordingly, we vacate the entry of summary judgment in favor of Chapman and remand for further proceedings consistent with this opinion. Due to our decision on the first issue, we decline to reach the remaining issues.

¶ 4                                JURISDICTION

¶ 5    The trial court entered summary judgment in favor on Chapman on October 30, 2014. Thereafter, the trial court denied Cincinnati's motion to reconsider on February 20, 2015. On the

same day, the trial court entered an order pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) that based on the court's expressed findings no just reason existed to delay enforcement or appeal from the October 30, 2014 judgment. Cincinnati timely filed its notice of appeal on March 20, 2015. Accordingly, this court has jurisdiction over this matter pursuant to article VI, section 6 of the Illinois Constitution, and Illinois Supreme Court Rules 301 and 304(a). Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 304(a) (eff. Feb. 26, 2010).

¶ 6                                     BACKGROUND

¶ 7      C.T. Phoenix of Indiana, Inc. was an Indiana corporation with a single office located in Mt. Vernon, Indiana. Phoenix manufactured and sold, among other things, an insulated roofing system. The Cincinnati Insurance Company is an Ohio corporation with its primary place of business located in Cincinnati, Ohio. Cincinnati insured Phoenix under Commercial General Liability/Umbrella policy number CPP-074-42-79 for the policy period of March 18, 2003 to March 18, 2006 (hereinafter "the 2003-06 Policy"). That policy was renewed under number CPP-086-88-08, for the period of March 18, 2006 to March 18, 2007 (hereinafter the "2006 Policy").

¶ 8      On August 26, 2008, Arnold Chapman (Chapman) filed suit against Phoenix in the circuit court of Lake County, Illinois, as case number 08 CH 3212, in a matter entitled "Arnold Chapman, individually and as the representative of a class of similarly-situated persons, Plaintiff v. C.T. Phoenix of Indiana, Inc., Defendant" (hereinafter "the Chapman suit"). Attached to Chapman's complaint was a one-page advertisement that Phoenix allegedly faxed to Chapman on June 6, 2006, without Chapman's prior consent. Chapman's complaint alleged that Phoenix's June 6, 2006 telefax constituted a violation of the TCPA (47 U.S.C. § 227 (2006)), the Illinois

Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2008)), and common-law conversion.

¶ 9    The Chapman suit asserted claims on behalf of all persons who might have received advertising telefaxes from Phoenix during the three, four, and five year statutes of limitations applicable to the three causes of action. However, the complaint contained no facts describing any misconduct by Phoenix on any date other than the alleged misconduct on June 6, 2006.

¶ 10    Phoenix notified Cincinnati of the Chapman suit on January 9, 2009, and demanded that Cincinnati afford defense and indemnity coverage. On January 20, 2009, Cincinnati denied coverage. Cincinnati perceived that since the Chapman suit described no misconduct other than the unsolicited telefax sent on June 6, 2006, only the 2006 Policy, which went into effect on March 18, 2006, was potentially triggered. Cincinnati denied coverage under the 2006 Policy based on the TCPA conduct exclusion, which provided in pertinent part as follows:

*This insurance does not apply to:*

*Distribution of Material in Violation of Statutes*

> *Bodily injury or property damage arising directly or indirectly out of any action or omission that violates or is alleged to violate:*
>
>> *(a)    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or \*\*\**

¶ 11    Cincinnati argued that since all of the damage asserted by Chapman against Phoenix arose from the June 6, 2006 act of sending the telefax described in the complaint, all of the collateral claims were also barred because they arose "directly or indirectly out of any action or omission that violated or is alleged to violate \*\*\* the TCPA."

¶ 12     On June 23, 2009, Phoenix and Chapman announced a settlement of the Chapman suit. On August 2, 2009, after a preliminary order approving the settlement, certification of the class, notice to the class, and a final approval hearing, the court entered an order finally approving the settlement and entering judgment against Phoenix and in favor of Chapman in the amount of $4,999,999.98. That judgment certified the judgment class as being "all persons to whom advertising facsimiles were sent by or on behalf of the Defendants during the period of June 1, 2006, through June 30, 2006 without their prior express invitation or permission." Under the terms of the settlement, the judgment was collectible solely from Phoenix's available insurance coverage, if any.

¶ 13     Chapman, acting as a judgment creditor, issued a third party citation to discover assets to Cincinnati claiming that it was in possession of property (*i.e.*, coverage under insurance policies issued to Phoenix) that could be used to satisfy the judgment entered against Phoenix. The citation proceeding was stayed when Cincinnati commenced these declaratory proceedings to obtain an adjudication of its rights and obligations.

¶ 14     After completing written and oral discovery, the parties to the declaratory proceedings filed cross-motions for summary judgment. Those cross-motions disputed whether Indiana law or Illinois law applied to determine the validity of the 2006 Policy's TCPA exclusion. The parties agreed that choice of law was dependent upon Cincinnati's proof that application of Indiana law would "make a difference in the outcome." Chapman contended that there was no material difference between Illinois and Indiana law.

¶ 15     Cincinnati identified two independent issues under which the application of Indiana law would result in a different outcome than the application of Illinois law. First, Cincinnati argued it was not required to give 30 days' advance notice under Indiana law. Chapman argued that the

TCPA exclusion in the 2006 Policy, which was added upon renewal of the 2003-06 Policy, was not enforceable because Cincinnati had failed to give 30 days' advance notice as required by Illinois statute (215 ILCS 5/143.17 (West 2008)). Cincinnati argued that the enforceability of the TCPA exclusion in its 2006 Policy would depend on whether Illinois law or Indiana law was applied. With respect to Illinois law, Cincinnati admitted that it had not given the 30 days' advance notice required by section 143.17 of the Illinois Insurance Code. However, Cincinnati argued that Indiana followed the common law and enforced clear and unambiguous contract language "as written." Thus, Cincinnati argued that under Indiana law, no advanced notice was required to validate the TCPA exclusion added to the 2006 Policy.

¶ 16 The second outcome determinative difference between Illinois and Indiana laws identified by Cincinnati concerned estoppel. Chapman argued that under Illinois law, Cincinnati's breach of the duty to defend under the 2003-06 Policy estopped it from raising any policy defenses, including the 2006 exclusion. Cincinnati argues under Indiana law, even if it had breached the 2003-06 Policy it would not be precluded from raising the exclusion as a defense.

¶ 17 On June 24, 2014, the circuit court heard oral arguments on the parties' cross-motions for summary judgment with the majority of argument spent on which state's law should apply to the insurance policies. Following, oral argument the court scheduled a ruling date of September 19, 2014.

¶ 18 Shortly after the July 24, 2014, hearing, Cincinnati filed a "Motion to Supplement the Record." The motion represented that at oral argument both parties represented to the court that there was no Indiana law (besides one appellate case) addressing exclusions added upon renewal. Cincinnati sought to supplement the record with section 27-1-22-4 of the Indiana Code (Ind.

Code Ann. § 27-1-22-4 (West 2014)). Subsection (p) dealt directly with the notice required to be given if changes to a policy are made upon renewal. (Ind. Code Ann. § 27-1-22-4(p) (West 2014)). In the motion, Cincinnati acknowledged that this provision did not become effective until 2007, nine months after the issuance of the 2006 Policy, and was therefore not directly applicable to the renewal. On September 16, 2014, the circuit court granted Cincinnati's motion, and set a new ruling date on the summary judgment motions.

¶ 19    On October 30, 2014, the circuit court granted summary judgment in favor of Chapman. First, the court rejected Chapman's claims under the 2003-06 Policy. The court held that Chapman's complaint failed to allege any facts to support a duty to defend prior to the March 18, 2006 effective date of the 2006 Policy, and concluded that Chapman's claims would be limited to the 2006 Policy.

¶ 20    Next, the circuit court found that Illinois law, rather than Indiana law, must be applied to determine Cincinnati's coverage obligations. The court concluded that the law of Indiana pertaining to an insurer's obligation to notify its insured of changes in the renewal policy was "unsettled" at the time of the 2006 Policy and, thus, at best, created no more than a "potential conflict" with Illinois law. Because Cincinnati had admitted that it did not comply with the advance notice requirements, the circuit court concluded that the application of Illinois law established that the 2006 Policy's TCPA exclusion was invalid. Absent that exclusion, Cincinnati had breached the duty to defend under the 2006 Policy. The final part of the court's order found that the Chapman Suit triggered indemnity coverage under both Coverage A (property damage) and Coverage B (advertising injury) provisions of the 2006 Policy. The trial court made no specific finding regarding Cincinnati's estoppel argument.

¶ 21    On November 12, 2014, Cincinnati filed a motion to reconsider the circuit court's order of October 30. First, Cincinnati argued that the trial court's determination regarding notice under Indiana law was contrary to Indiana case law. Second, Cincinnati raised a constitutional due process argument.

¶ 22    On February 20, 2015, the circuit court denied Cincinnati's motion to reconsider. The court reiterated that it found Indiana law unsettled, and therefore no actual conflict existed between Illinois and Indiana laws. The court further determined that because it found no conflict between the states' laws, no due process analysis was required.

¶ 23    Cincinnati timely filed a notice of appeal on March 20, 2015. It raises the following issues for our review: (1) whether the circuit court erred in finding no conflict between Illinois and Indiana laws, thus concluding that Illinois law applied to the 2006 Policy renewal; (2) whether the circuit court erred in not finding that Indiana's estoppel law applied; and (3) whether the circuit court's decision violated that fundamental fairness test of constitutional due process.

¶ 24                                    ANALYSIS

¶ 25    Before moving on to the issues raised by Cincinnati, we must first address an issue raised in Chapman's brief. In his response, Chapman contends Cincinnati had a duty to defend under the 2003-06 Policy. In its order of October 30, 2014, the trial court made a specific finding that the 2003-06 Policy did not apply based on the reasoning found in *G.M. Sign, Inc. v. State Farm Fire & Casualty Co.,* 2014 IL App (2d) 130593. The circuit court found that *G.M. Sign* controlled and concluded that, like the complaint in that case, Chapman's complaint lacked sufficient factual allegations that the insured actually sent any faxes that could trigger the insurer's duty to defend under the 2003-06 Policy. Accordingly, the circuit court found that Cincinnati did not breach its duty to defend under the 2003-06 Policy.

¶ 26     As part of its response, Chapman argues that Cincinnati's duty to defend was triggered under the 2003-06 Policy, essentially seeking a reversal of part of the October 30, 2014 summary judgment order.  In its reply, Cincinnati argues that Chapman has waived the right to challenge that portion of the circuit court's order by failing to file a cross-appeal.  We agree.

¶ 27     Where a general decision for the appellee contains findings unfavorable to the appellee and no cross-appeal is filed, the adverse findings are not properly before the reviewing court. *Cleys v. Village of Palatine*, 89 Ill. App. 3d 630, 635 (1980); accord *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 387 (1983) (findings of the trial court adverse to the appellee require the appellee's cross-appeal if the judgment of the trial court was at least in part against the appellee).

¶ 28     Because Chapman failed to file a cross-appeal concerning the circuit court's finding that the 2003-06 Policy was not applicable, the issue is not properly before this court and we will not consider it.

¶ 29     The first issue raised by Cincinnati is whether the trial court erred in applying Illinois law over Indiana law after determining there was no conflict between the two.  A circuit court's choice-of-law determination is reviewed *de novo*.  *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 153-54 (2007).

¶ 30     Our supreme court has stressed that any "choice-of-law analysis begins by isolating the issue and defining the conflict.  A choice-of-law determination is required only when a difference in law will make a difference in the outcome."  *Id.* at 155.  "[A] choice-of-law determination is required only when the moving party has established an actual conflict between state laws."  *Bridgeview Health Care Center, Ltd. v. State Farm Fire & Casualty Co.*, 2014 IL 116389, ¶ 25.

¶ 31    The parties disagree as to whether an actual conflict exists between Illinois and Indiana laws.  Cincinnati maintains that the 2006 TCPA exclusion would not have been invalidated under Indiana law because Indiana law did not require 30 days' advanced notice.  Chapman argues Indiana law was unsettled at the time and therefore Cincinnati has failed to carry its burden of demonstrating an actual conflict.  Accordingly, our review begins with the notice requirements of Illinois and Indiana laws.

¶ 32    Both parties agree as to the notice requirements in Illinois at the time.  In Illinois, an insurer is statutorily required to provide a named insured with 30 days' advance notice of the insurer's intention not to renew.  215 ILCS 5/143.17(a) (West 2012).  The Illinois Insurance Code defines a renewal policy as "any successive polic[y] issued by the same insurer to the same insured, for the same or similar coverage."  215 ILCS 5/143.13 (West 2012).  Illinois case law interprets these provisions to require an insurer to provide an insured with 30 days' advance notice of any "material change" in a successive policy.  See, *e.g.*, *Perry v. Economy Fire & Cas. Co.*, 311 Ill. App. 3d 69, 71 (1999).  "Material changes" include new exclusions added to a successive policy.  *Id.* at 71-72.  Failure to provide the statutorily prescribed notice of a new exclusion will void the exclusion.  *Id.*

¶ 33    The parties disagree what kind of notice, if any, was required under Indiana law at the time of the renewal.  Both parties acknowledge that at the time of the renewal in 2006, Indiana lacked any statutory requirement regarding notice to the insured for material changes in an insurance policy.

¶ 34    Under Indiana law, insurance policies are governed by the same rules of construction as other contracts.  *Briles v. Wausau Insurance Cos.*, 858 N.E.2d 208, 213 (Ind. Ct. App. 2006) (citing *Gregg v. Cooper*, 812 N.E.2d 210, 215 (Ind. Ct. App. 2004)).  When interpreting an

insurance policy, the goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. *Id.* Insurance carriers have the liberty to limit their coverage provided that the exclusions are clearly expressed in unmistakable terms that particular losses are excluded. *Jackson v. Jones*, 804 N.E.2d 155, 158 (Ind. Ct. App. 2004).

¶ 35 To support its position, Cincinnati relies primarily on *Lexington Insurance Co. v. American Healthcare Providers*, 621 N.E.2d 332 (Ind. Ct. App. 1993). In *Lexington*, officers and corporate directors of American Healthcare Providers were sued when the company went into liquidation. They requested Lexington, the companies' insurance provider, defend and indemnify them. *Id.* at 335. On appeal to the Indiana Appellate Court, Lexington argued that coverage should be denied based on Exclusion Q in the insurance agreements. One of the grounds for attacking Exclusion Q was that it was "inapplicable because they did not receive notice of its provisions." *Id.* In making their notification argument to the Indiana Appellate Court, the officers and directors asked the court to "adopt the general rule followed in other states which requires insurers to notify insureds about changes in coverage when insurance policies are renewed." *Id.* at 340. Citing cases from other states, the court stated, "[t]he general rule imposes a duty on insurers to notify insureds of policy changes, reasoning that insureds can presume that the renewal of an insurance policy will be on the same terms as previously agreed unless they are specifically notified otherwise." *Id.* The court did not adopt the rule because "[e]ven if we accepted the Plaintiffs' argument and imposed upon Lexington a duty to notify its insureds of changes in policy coverage, the record demonstrates that Lexington adequately discharged that duty." *Id.* The court noted that the record reflected Lexington had sent a letter to plaintiffs' insurance agent which included copies of the new exclusions. *Id.* Notably, the

petition to transfer to the Indiana Supreme Court was denied. 621 N.E.2d 332, *transfer denied* (Mar. 3, 1994).

¶ 36    Cincinnati also relies on *Wurster Construction Co., v. Essex Insurance Co.*, 918 N.E.2d 666 (Ind. Ct. App. 2009), to support its argument that Indiana has different notice requirements from Illinois. *Wurster*, like the case currently before the court, dealt with an initial policy and a renewal policy which contained a new exclusion not in the initial policy. *Id.* at 680. Unsurprisingly, an accident occurred and the insurance company sought to exclude coverage on the basis of the new exclusion in the renewal policy. *Id.* In trying to invalidate the exclusion, the insured argued that it was never informed of the new exclusion and never received a copy of the renewal policy containing the exclusion. *Id.* In finding the exclusion did apply, the court found knowledge of the exclusion could be imputed to the insured through its insurance agent, who accepted the policy on its behalf. *Id.* at 681.

¶ 37    Finally, Cincinnati points to section 27-1-22-4(p) of the Indiana Code to support its argument that Indiana law and Illinois law differ in regard to notice. Section 27-1-22-4(p) states, "[i]f coverage under a commercial property or commercial casualty insurance policy is changed, upon renewal of the policy, the insurer shall provide to the policyholder and insurance producer through which the policyholder obtains the coverage a written notice that the policy has been changed." Ind. Code Ann. § 27-1-22-4(p) (West 2014). Cincinnati acknowledges that this provision was not in effect at the time the 2006 Policy was issued, but argues that the codification represents the first time Indiana obligated insurers to notify insureds of changes in renewal policies as a condition for enforcing new restrictions in coverage.

¶ 38    In responding to Cincinnati's argument regarding notice in Indiana, Chapman argues Indiana law was unsettled regarding the required notice and because it was unsettled, no actual

conflict between Indiana and Illinois existed. To support its argument, Chapman relies primarily on the recent Illinois Supreme Court decision in *Bridgeview Healthcare Center, Ltd. v. State Farm Fire & Casualty Co.*, 2014 IL 116389. Pursuant to *Bridgeview*, Chapman argues that Cincinnati has failed to demonstrate an "actual conflict" and its argument amounts to little more than a "potential" conflict between Illinois and Indiana.

¶ 39 The *Bridgeview* court specifically held a "potential" conflict is insufficient to establish a conflict of law. *Id.* ¶ 25. In *Bridgeview*, the court was presented with a specific question: "[w]hen a federal district court sitting in a sister state makes a prediction under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), that the supreme court of that state would resolve a legal issue in a way that is at odds with Illinois law, does that prediction, in itself, establish an actual conflict between the two states' law for purposes of a choice-of-law analysis?" *Id.* ¶ 1. The court determined that a federal court making an "*Erie* prediction" about what a sister state's supreme court may do was insufficient to establish an actual conflict. *Id.* at ¶ 26. Importantly, the court acknowledged "State Farm identifies *no* Indiana law on point." (emphasis added.) *Id.*

¶ 40 We find that an actual conflict does exist between Indiana and Illinois regarding the notice an insurer is required to give an insured when an exclusion is added to an insurance policy at the time of renewal. At the time the 2006 Policy was issued, Illinois required an insurer provide an insured 30 days' advance notice. Indiana did not. Even today, section 27-1-22-4(p) of the Indiana Code does not require the 30 days' advance notice Illinois requires.

¶ 41 Unlike the insurer in *Bridgeview*, Cincinnati supports its argument with decisions from Indiana's appellate court. Illinois has long held that an opinion from an intermediate court of review can be sufficient to establish an actual conflict. In *Moscov v. Mutual Life Insurance Co. of New York*, 387 Ill. 378 (1944), the Illinois Supreme Court held that "Illinois courts must

accept the decision of an intermediate court of review as stating the law of another jurisdiction in the absence of any conflicting decision by another appellate court of coordinate jurisdiction in that state or by its highest court of review." *Bridgeview*, 2014 IL 116389, ¶ 21 (citing *Moscov*, 387 Ill. at 389). Because Chapman points to no other conflicting appellate decision or a decision of the Indiana Supreme Court, we must accept *Lexington* as the rule regarding notice prior to the enactment of section 27-1-22-4(p) of the Indiana Code.

¶ 42 We find the *Lexington* decision establishes that in 2006 an insurer was not required to provide 30 days' advance notice to insureds about changes in coverage. In *Lexington*, plaintiffs asked the Indiana court to "adopt the general rule followed in other states which requires insurers to notify insureds about changes in coverage when insurance policies are renewed." *Lexington*, 621 N.E.2d at 340. In asking the court to adopt such a rule, the obvious implication is that no such rule existed in Indiana at the time. Had advanced notice or even concurrent notice been required, there would have been no reason to ask the court to adopt such a rule. Moreover, based on *Lexington* and *Wurster*, Indiana courts uphold new exclusions if notice was provided to the insured's agent at the time of renewal. *Wurster*, 918 N.E.2d at 680-81; *Lexington*, 621 N.E.2d at 340-41.

¶ 43 After finding that a conflict exists between the notice requirements in Indiana and Illinois, a determination must be made as to which state's law governs the insurance policy at issue here.

¶ 44 "Absent an express choice of law, insurance policy provisions are generally 'governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract.' " *Lapham-*

*Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 526-57 (1995) (quoting

*Hofeld v. Nationwide Life Insurance Co.*, 59 Ill. 2d 522, 528 (1975)).

¶ 45    The record shows that at the time the policy was renewed in 2006, Phoenix was an

Indiana corporation with a single office in Mt. Vernon, Indiana, while Cincinnati is an Ohio

corporation with its principle place of business in Cincinnati, Ohio.[1]    The record does not

indicate whether Phoenix was licensed to conduct business in Illinois.  The only connection to

Illinois is that the alleged fax from the underlying lawsuit was sent to an Illinois resident.

Moreover, the place bearing a rational relationship to the insurance contract is Indiana.

Accordingly, Indiana law must govern the insurance agreement between Cincinnati and Phoenix.

¶ 46    Because of our determination regarding the first issue raised by Cincinnati, we decline to

review the two remaining issues.

¶ 47                                         CONCLUSION

¶ 48    The circuit court erred when it determined that no actual conflict existed between Indiana

and Illinois laws regarding the notice requirements when an exclusion is added to an insurance

contract upon renewal.  After determining that an actual conflict exists, the relevant choice-of-

law factors require the use of Indiana law to determine the validity of the exclusion.

Accordingly, we vacate the summary judgment entered in favor of Chapman and remand for

further proceedings consistent with this opinion.

¶ 49    Order reversed and remanded.

---

[1] The record indicates that Phoenix ceased operations sometime after 2009.