**WURSTER CONSTRUCTION CO., INC., Appellant–Defendant/Cross–Appellee,**

v.

**ESSEX INSURANCE COMPANY, Appellee–Plaintiff/Cross–Appellant,**

Kane Construction, Inc. and Christine McGinley, Special Administrator of the Estate of Christian King, Appellees–Defendants.

No. 41A01–0903–CV–130.

Court of Appeals of Indiana.

Dec. 29, 2009.

---

**668**

Joseph M. Dietz, Neil A. Davis, Andrew M. Sumerford, Meils Thompson Dietz &

Berish, Indianapolis, IN, Attorneys for Appellant.

John T. Hume III, Edward F. Harney, Jr., Mark M. Holdridge, Hume Smith Geddes, Green & Simmons, LLP, Indianapolis, IN, Attorneys for Appellee, Essex Insurance Company.[1]

## OPINION

KIRSCH, Judge.

Wurster Construction Co., Inc. ("Wurster") appeals the trial court's January 27, 2009 belated grant of Essex Insurance Company's ("Essex") motion to correct error. Wurster raises one issue on appeal, which we restate as two:

I. Whether the trial court's belated grant of Essex's motion to correct error, and resultant grant of summary judgment in favor of Essex, is void because Essex's motion was "deemed denied" by operation of Indiana Trial Rule 53.3(A); and

II. Whether Essex is precluded from asserting on cross-appeal the issues it raised in its motion to correct error for the reason that Essex failed to timely appeal the deemed denial.

On cross-appeal, Essex raises the same issue it raised in its "deemed denied" motion to correct error, which we restate as:

III. Whether the trial court erred in denying Essex's motion for summary judgment as to Kane Construction, Inc. ("Kane"), Wurster's subcontractor, by finding that Essex had a duty both to insure and to defend Kane in a wrongful

1. Robert W. Johnson, of the Hastings Law Firm, Indianapolis, Indiana, entered an appearance on behalf of Christine McGinley, Special Administrator of the Estate of Christian King. Patrick F. Mastrian III, of Brown, Tompkins, Lory & Mastrian, Indianapolis, Indiana, entered an appearance on behalf of Kane Construction, Inc. Neither of those attorneys, however, filed a brief in this appeal.

death suit filed by Christine McGinley, as Special Administrator of the Estate of Christian King ("Estate").

Finding that the trial court's belated grant of Essex's motion to correct error is void by the instant appeal, we vacate that order. On cross-appeal, we reverse the trial court's initial order, and we remand with instructions to enter summary judgment in favor of Essex as against Kane and Wurster.[2]

## FACTS AND PROCEDURAL HISTORY

Wurster was the general contractor for a construction project in Marion County, Indiana, known as Westminster Village North (the "Project"). On March 3, 2003, Wurster entered into a subcontract with Kane to complete a portion of the Project. *Appellee's App.* at 90–124.[3] Pursuant to the subcontract, Kane agreed to procure insurance coverage and maintain such coverage until the completion of its subcontracting work. Kane also agreed that such insurance policy (1) would name Wurster as an additional insured, and (2) "be deemed primary insurance to any insurance the contractor [Wurster] may obtain for its own benefit, which shall be excess or secondary but not contributing insurance." *Id.* at 12.

Kane assigned its subcontracted work to Main Street Construction ("Main Street") on May 29, 2003. *Id.* at 126. Kane's assignment of work did not require Main Street to obtain insurance coverage for Kane. On September 29, 2005, Christian King ("King"), a Main Street employee, sustained fatal injuries when he fell from a third-story roof while working at the Project.

In June 2006, the Estate filed a wrongful death action against Wurster claiming that King was Wurster's business invitee and that Wurster negligently failed to maintain a safe work place, failed to comply with OSHA safety regulations, and negligently selected Main Street as a subcontractor. *Id.* at 9. That action was filed in Marion Superior Court under Cause No. 49D04–0606–CT–22770. *Id.* at 8. In response to that action, Wurster demanded that Kane defend and indemnify Wurster in connection with that action. When Kane refused, Wurster filed a third-party complaint, in Marion Superior Court, against Kane, Main Street, and Pekin Insurance Company (Main Street's insurer). *Id.* at 11–15. Thereafter, the Estate filed an amended complaint naming Kane as an additional party in the wrongful death action. *Id.* at 82.

Prior to King's death, Kane had purchased commercial general liability insurance coverage from Essex through an agent known at different times as Walker–Day Insurance, Day Insurance, and Walker and Associates ("Walker"). Essex insured Kane through Policy 3CL0650 ("Initial Policy"), which covered a period from October 6, 2003 to October 6, 2004. *Id.* at 16. In the fall of 2004, an Essex underwriter authorized the renewal of the Initial Policy. The proposed renewal was accepted by a Walker agent, Jerry Day, thus creating Policy 3CL0650–1 (the "Renewed Policy"). *Id.* at 62. Essex's Renewed Policy insured Kane for the period from October 6, 2004 to October 6, 2005 and was the policy in existence at the time of King's death. *Id.*

---

2. We held oral argument in this case on September 30, 2009. We commend counsel for the quality of their written and oral advocacy.

3. Essex was the only appellee to file a brief or an appendix. As such, our reference to Appellee is a reference to Essex.

In September 2006, Essex filed the instant action in Johnson Superior Court seeking a declaratory judgment as to whether Essex had a duty under the Renewed Policy to insure and to defend Wurster and Kane in the Estate's wrongful death action. The Estate filed a counterclaim for declaratory judgment against Essex, Kane, and Wurster. *Appellant's App.* at 4, *Appellee's App.* at 136. On April 7, 2008, Essex filed a motion for summary judgment against Kane, Wurster, and the Estate. *Appellee's App.* at 2. Wurster filed its response in opposition to the motion for summary judgment.[4]

Following a hearing, the trial court entered an order dated August 25, 2008 ("2008 Order"), in which it granted in part and denied in part Essex's motion for summary judgment. The trial court's *grant of summary judgment* declared that under the Renewed Policy Essex had "no insurance coverage" for and "no obligation to defend" the claims asserted by the Estate against Wurster for Wurster's own negligence. *Id.* at 216. The trial court's *denial of summary judgment* declared that, under the Renewed Policy, Essex did have insurance coverage for and a duty to defend the claims asserted by the Estate against Kane for Kane's own negligence.

In the 2008 Order, the trial court, distinguishing between the entities of Kane and Main Street, concluded that Essex's coverage of Kane did not extend to Main Street. *Id.* Noting that a determination of liability was reserved to the Marion Superior Court in the Estate's pending action for wrongful death, the trial court concluded

that the 2008 Order was dispositive of all issues before the court. *Id.* Finding no just reason for delay, the trial court ordered that judgment be entered in accordance with Indiana Trial Rule 54.

On September 22, 2008, Wurster filed a "Motion to Correct Error and Petition for Clarification." *Appellant's App.* at 30. While not addressing the trial court's conclusion that Essex owed no duty to Wurster for Wurster's own negligence, Wurster requested clarification as to whether Essex was obligated to defend and indemnify Wurster with respect to liability stemming from the Estate's assertion that Wurster was "vicariously liable for the negligence of Kane via a non-delegable duty theory." *Id.* at 34.

Essex filed its own motion to correct error on September 23, 2008. *Id.* at 7, 20. In that motion, Essex requested that the trial court correct error "by declaring that under [the Renewed Policy], Essex has no insurance coverage for and no duty to defend Kane ... and/or Wurster ... for the law suit prosecuted by [the Estate] for the reason that at the time and place that [King] sustained his 'bodily injury' which resulted in his death, he was an employee of an independent contractor, Main Street ... who had contracted with Kane to perform construction work on the [Project]."[5] *Id.* at 20–21.

The trial court held a hearing on December 9, 2008, to consider the parties' motions to correct error. No ruling came within thirty days of the hearing; therefore, the motions were "deemed denied" by

---

4. Neither Kane (Defendant/Counterclaim Defendant) nor the Estate (Defendant/Counterclaim Plaintiff) filed a response to Essex's motion for summary judgment.

5. It is not clear why Essex, having been granted summary judgment as to Wurster, included Wurster in its motion to correct error.

The motion may have been a response to Wurster's motion to correct error, which was filed the previous day and requested clarification as to whether Essex had a duty to defend or indemnify Wurster in the Estate's claim that Wurster was vicarious liability for Kane's negligence.

operation of Indiana Trial Rule 53.3 on January 8, 2009. Neither Essex nor Wurster appealed their respective "deemed denial."

■ Prior to each party's February 7, 2009 deadline for appealing the deemed denial, the trial court entered a belated order, dated January 27, 2009 ("Belated Grant"), granting Essex's motion to correct error and clarifying the 2008 Order as to Wurster. In the Belated Grant, the trial court granted summary judgment in favor of Essex, holding that Essex had no obligation under the Renewed Policy to defend or indemnify Kane or Wurster for any judgment obtained by the Estate against Kane or Wurster. *Appellant's Br.* at 19. Wurster now appeals, and Essex cross-appeals.[6]

## DISCUSSION AND DECISION

Essex's motion to correct error was deemed denied on January 8, 2009, pursuant to Trial Rule 53.3(A). Almost three weeks later, but within the time period during which Essex as the proponent of the motion to correct error could have appealed that deemed denial, the trial court entered the Belated Grant in favor of Essex. Wurster, as the opponent of the motion to correct error, timely appealed and challenged the validity of the Belated Grant. Essex cross-appealed, again raising the issues in its motion to correct error.

### I. Validity of Belated Grant

■ Motions to correct error are governed by Trial Rule 53.3. *Trisler v. Executive Builders, Inc.,* 647 N.E.2d 390, 393 (Ind.Ct.App.1995), *trans. denied.* "That rule provides that a motion to correct er-

ror 'shall be deemed denied' if a trial judge fails to rule upon it 'within thirty (30) days' after it was heard or forty-five (45) days after it was filed, if no hearing is required...." Ind. Trial Rule 53.3(A). "This denial is automatic; it is 'self-activating upon the passage of the requisite number of days.'" *Trisler,* 647 N.E.2d at 393 (quoting *Remington Freight Lines, Inc. v. Larkey,* 644 N.E.2d 931, 936 (Ind.Ct.App. 1994)). Trial Rule 53.3(A) further provides, "Any appeal shall be initiated by filing the notice of appeal under Appellate Rule 9(A) within thirty (30) days after the Motion to Correct Error is deemed denied." T.R. 53.3(A).

Generally, a trial court has wide discretion to correct errors, and we will reverse only for an abuse of that discretion. *Paulsen v. Malone,* 880 N.E.2d 312, 313 (Ind. Ct.App.2008). An abuse of discretion occurs when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences that may be drawn therefrom, or is based on impermissible reasons or considerations. *Id.*

Wurster first contends that the trial court's January 27, 2009 Belated Grant is a nullity pursuant to Trial Rule 53.3(A). Specifically, Wurster argues that our Supreme Court's reasoning in *Garrison v. Metcalf,* 849 N.E.2d 1114 (Ind.2006) supports the position that the 2008 Order should stand because the trial court "was without power to rule as a matter of law once the date of deemed denial passed." *Appellant's Br.* at 5.

■ Citing to *Garrison,* Wurster contends that:

> issue because, "this court has inherent authority to reconsider any decision while an appeal remains *in fieri.*" *Miller v. Hague Ins. Agency, Inc.,* 871 N.E.2d 406, 407 (Ind.Ct. App.2007).

---

6. On May 6, 2009, Wurster filed a motion to dismiss Essex's cross-appeal. The motions panel of this court entered an order on June 1, 2009, denying Wurster's motion to dismiss Essex's cross-appeal. We again address this

where a court fails to rule on a motion to correct error within the timeframe set forth in the rule, but then grants the motion after the "deemed denied" date, the party who filed the motion to correct error must initiate a timely appeal within thirty (30) days of the "deemed denied" date if the movant wants the belated grant to stand. Otherwise, where the movant fails to timely appeal after the appeal clock tolls beginning on the "deemed denied" date, or never appeals at all, the belated grant of the motion to correct error does not stand.

*Appellant's Br.* at 5–6. This statement, while correct when applied to the facts of *Garrison,* is misleading as to the analysis this court must follow when presented with the question of the validity of a belated grant of a motion to correct error. Our inquiry involves not one, but two steps. Initially, we must determine whether a belated grant is void. *Cavinder Elevators, Inc. v. Hall,* 726 N.E.2d 285, 288 (Ind. 2000); *Paulsen,* 880 N.E.2d at 313. If the Belated Grant is void, then and only then do we address the second issue—whether the issues raised by the movant in its motion to correct error can again be raised on cross-appeal. *HomEq Servicing Corp. v. Baker,* 883 N.E.2d 95, 97 (Ind.2008); *Cavinder,* 726 N.E.2d at 288.

■ We first address step one—the validity of the Belated Grant. Prior to 2000, our courts held that once a motion to correct error was deemed denied by operation of Trial Rule 53.3(A), "the trial court's power to rule on the motion 'was extinguished'; therefore, its subsequent ruling was 'a nullity.'" *Moran v. Cook,* 644 N.E.2d 179, 180 (Ind.Ct.App.1994).

Thereafter, our Supreme Court, recognizing the hurdle facing an opponent of a motion to correct error who tries to appeal a "null" belated grant, shifted its analysis and held:

> the belated grant of the motion to correct error in this case is not necessarily a nullity but rather is voidable and subject to enforcement of the "deemed denied" provision of Trial Rule 53.3(A) in the event the party opposing the motion to correct error promptly appeals. Had the defendant failed to promptly appeal this belated grant, such failure would constitute waiver and would have precluded a subsequent appellate claim that the motion to correct error was deemed denied under Trial Rule 53.3(A).

*Cavinder,* 726 N.E.2d at 288.

While the *Cavinder* reasoning did not change the automatic nature of a Trial Rule 53.3(A) deemed denial, it did change the import of such deemed denial. Following *Cavinder,* a belated grant of a motion to correct error, which is entered after the motion is deemed denied, is not a nullity. Instead, such belated grant is "voidable and subject to enforcement of the deemed denied provision of Trial Rule 53.3(A)." *Cavinder,* 726 N.E.2d at 288.[7]

Essex filed its motion to correct error on September 23, 2008. The trial court held a hearing on December 9, 2008, and when no ruling came within thirty days of such hearing, the motion was deemed denied by operation of law on January 8, 2009. On January 27, 2009, prior to Essex's deadline for appealing, the trial court entered the Belated Grant in favor of Essex. When Wurster timely appealed the trial court's Belated Grant, that order was

---

**7.** Had Wurster failed to appeal the Belated Grant, such failure would have constituted waiver. Wurster would have been precluded from making a subsequent appellate claim that the Belated Grant was void for the rea- son that it was entered after a Trial Rule 53.3(A) deemed denial. *Cavinder,* 726 N.E.2d at 288. In such a case, a belated grant would stand.

"subject to enforcement of the 'deemed denied' provision of Trial Rule 53.3(A);" that is, the Belated Grant was made void. *Cavinder,* 726 N.E.2d at 288; *Paulsen,* 880 N.E.2d at 313. We agree with Wurster that the Belated Grant is void.

## II. Essex's Cross–Appeal

Finding that the Belated Grant is void, we must now address the second step of the two-prong inquiry—whether the issues raised by Essex in its motion to correct error can again be raised on cross-appeal. Essex contends that under our Supreme Court's reasoning in *Cavinder* and *HomEq,* it may still raise as cross-error the same issues raised in its motion to correct error, *i.e.,* the merits of the trial court's denial of Essex's motion for summary judgment as to Kane. Essex asserts that, because the trial court entered the Belated Grant within the thirty-day time period during which Essex could appeal the "deemed denial," Essex is entitled to assert as cross-error the issues presented in its motion to correct error. Wurster counters that the facts of this case fall squarely within our Supreme Court's reasoning in *Garrison* and, because the three cases cannot be reconciled, *Garrison* mandates that the deemed denial must stand.

*Cavinder, Garrison,* and *HomEq* each address the question of when a proponent of a motion to correct error can raise on cross-appeal the issues initially raised in its motion to correct error. While seemingly inconsistent, these cases, when read together, can be reconciled.

### A. *Cavinder*

As previously discussed, in 2000, our Supreme Court held that a belated grant of a deemed denied motion to correct error was not a nullity, but, instead, merely voidable. *Cavinder,* 726 N.E.2d at 288. In *Cavinder,* the Plaintiff–Appellee, Hall, filed a motion to correct error on May 8, 1995, challenging the trial court's grant of summary judgment in favor of the Defendant–Appellant, Cavinder.[8] *Id.* at 286. The trial court held a hearing, and thirty days later, on September 18, 1995, Hall's motion to correct error was deemed denied pursuant to Trial Rule 53.3(A). Thereafter, on October 11, 1995, Hall timely filed a notice of appeal from his "deemed denied" motion to correct error.

On October 24, 1995, more than thirty days after the motion was deemed denied, the trial court belatedly granted Hall's motion to correct error and set aside its earlier grant of summary judgment in favor of Cavinder. Having obtained the relief sought, Hall did not further pursue the appeal. *Id.* at 287. Cavinder, however, appealed the belated grant of Hall's motion. This appeal enforced the deemed denied provision of Trial Rule 53.3(A). In response to Cavinder's brief, Hall cross-appealed seeking review on the merits of the issues presented in his motion to correct error. *Id.*

On transfer, our Supreme Court allowed Hall's cross-appeal, stating as follows:

> When a trial court considers and grants a motion to correct error, even if done belatedly, we perceive that such a decision will typically be correct on the merits and will result in expeditious further proceedings, without an intervening appeal. Sound judicial administration thus counsels against requiring a party whose motion to correct error is belatedly

---

**8.** No dates were included in our Supreme Court's decision in *Cavinder.* Therefore, for a more complete picture of the *Cavinder* facts, we looked to both our Supreme Court's decision in *Cavinder* as well as this court's decision in *Cavinder,* which was vacated on transfer. *Cavinder Elevators, Inc. v. Hall,* 670 N.E.2d 61, 63 (Ind.Ct.App.1996), *trans. granted.*

granted nevertheless to perfect an appeal from the superseded but "deemed denied" motion. These same concerns also counsel against permitting a belated grant of a motion to correct error long after its deemed denial has concluded the case as a final judgment from which an appeal was taken. Although we conclude that [Hall's] abandonment of his timely-commenced appeal should not preclude him from asserting by cross-error under Trial Rule 59(G) the issues presented in his motion to correct error, we hold that the rule does not authorize resort to cross-error as a device to raise claims abandoned by the failure to initiate a timely appeal upon the deemed denial of a motion pursuant to Rule 53.3(A).

*Id.* at 285.

Justice Sullivan, dissenting, argued that the majority's reasoning left "open-ended the time a trial court has to rule on a motion to correct error." *Id.* at 291. Justice Sullivan believed the correct analysis would have found that the belated grant was a nullity under Trial Rule 53.3(A) for the reason that the proponent of the motion to correct error abandoned his appeal of the deemed denial. As a nullity, our court would have lacked jurisdiction, and the appeal would necessarily have been dismissed. *Id.* at 292.

The *Cavinder* majority responded to the concerns of the dissent, stating:

[T]his application of Rule 53.3(A) does not create an open-ended time in which the trial court may rule. It applies only if, within thirty days after the motion is deemed denied, *the party filing the motion timely initiates an appeal,* and if the trial court belatedly grants the motion to correct error before the record of proceedings is filed, transferring jurisdiction to the appellate tribunal. If a belated grant occurs, the opposing party

may accept the ruling or may appeal to invalidate it as deemed denied pursuant to Rule 53.3(A). The party filing the motion may not thereafter assert as cross-error the issues presented in the "deemed denied" motion to correct error if the time for filing [the notice of appeal] has expired and the party failed to commence an appeal.

*Id.* at 288–89 (emphasis added). In footnote 4 of *Cavinder,* our Supreme Court elaborated on the italicized language as follows:

If the trial court belatedly grants a motion to correct error before the party filing the motion to correct error initiates an appeal but during the time period within which such party is entitled to appeal from the deemed denial, the party may assert as cross-error the issues presented in its "deemed denied" motion to correct error.

*Id.* at 289 n. 4 ("Footnote 4"). This language sets forth the two scenarios under which a proponent of a motion to correct error may again raise the issues originally presented in its "deemed denied" motion: first, where the proponent timely appeals the deemed denial ("Scenario 1"); and, second, the Footnote 4 exception, *i.e.,* where a belated grant is entered before the proponent appeals the deemed denial but during the time period within which the proponent is entitled to appeal from the deemed denial ("Scenario 2" or "Footnote 4").

Hall's motion to correct error was "deemed denied" on September, 18, 1995. *Id.* at 286. On October 11, 1995, Hall timely filed a notice of appeal. This filing triggered Scenario 1. Thereafter, on October 24, 1995, the trial court entered a belated grant. Having obtained the relief sought, Hall "did not further pursue his appeal." *Id.* at 286. Because the trial court's belated grant fell outside the timing parameters for application of the Foot-

note 4 exception, Hall's timely appeal of the deemed denial—Scenario 1—preserved for appeal the issues originally raised in his motion to correct error.[9] Absent that appeal, Hall would have been precluded from raising as cross-error the issues first raised in his motion to correct error.

### B. Garrison

In *Garrison*, a jury verdict was entered in favor of Plaintiff–Appellant Garrison, and on April 20, 2004, Defendant–Appellee Metcalf filed a motion to correct error.[10] The trial court held a hearing on June 28, 2004, and "Metcalf's motion to correct error was deemed denied on the thirtieth day following the hearing. Metcalf, unlike Hall, did not file a notice of appeal." *Garrison*, 849 N.E.2d at 1115. On August 3, 2004, six days after the motion was deemed denied, but within the time period during which Hall could have appealed, the trial court issued a belated grant of Metcalf's motion to correct error. On August 31, 2004, Garrison timely filed his notice of appeal "contending both that the motion had been 'deemed denied' under the Indiana Rules of Trial Procedure [53.3(A)] and that, if not deemed denied, had been wrongly granted." *Id.*

Metcalf, the proponent of the motion to correct error, filed a brief in the appeal but did not cross-appeal. Instead, he argued that, notwithstanding his failure to timely appeal the deemed denial, the trial court's belated grant of his motion to correct error could stand under our Supreme Court's reasoning in *Cavinder*. The *Garrison* court disagreed, noting, "*Cavinder* says that its holding 'applies only if, within thirty days after the motion is deemed denied, the party filing the motion timely initiates an appeal.'" *Id.* (quoting *Cavinder*, 726 N.E.2d at 289). Garrison's appeal enforced the Trial Rule 53.3(A) deemed denial and invalidated the belated grant. *Id.* at 1116.

Metcalf's motion to correct error was deemed denied; therefore, he could raise those same issues only if he satisfied one of the two scenarios. Scenario 1—the one under which the *Cavinder* proponent prevailed—was unavailable to Metcalf. By failing to timely appeal the deemed denial of his motion to correct error, Metcalf had forfeited his chance to proceed under that scenario. While Scenario 2 could have applied, Metcalf's own actions made him ineligible for that exception. By failing to file a cross-appeal to Garrison's appeal of the belated grant, Metcalf no longer qualified for treatment under Scenario 2. The belated grant was void and Metcalf failed to raise his issues on cross-appeal. Having no issues before it, our Supreme Court held that the original order stood. *Id.*

### C. HomEq

Eight years and three years, respectively, after *Cavinder* and *Garrison* were decided, *HomEq* presented facts that triggered Scenario 2—the Footnote 4 exception. In *HomEq*, the trial court granted summary judgment in favor of the Plaintiff–Appellant, HomEq, and Defendant–Appellee, Baker, filed a motion to correct error. The trial court held a hearing on the motion, and eight days after the mo-

9. The October 24, 1995 belated grant fell outside the thirty-day window (September 18–October 18, 1995) that Hall had to appeal the deemed denial. Had Hall failed to timely appeal the deemed denial, Cavinder's appeal of the belated grant would have caused the belated grant to be void and, having no issues for cross-error, the original order would stand.

10. No dates were included in our Supreme Court's decision in *Garrison*. Therefore, for a more complete picture of the *Garrison* facts, we looked to both our Supreme Court's decision in *Garrison* as well as this court's decision in *Garrison*, which was vacated on transfer. *Garrison v. Metcalf*, 828 N.E.2d 930 (Ind.Ct.App.2005), *trans. granted.*

tion was deemed denied by operation of Trial Rule 53.3(A), but twenty-two days before the time would run on Baker's ability to appeal the deemed denial, the trial court belatedly granted Baker's motion to correct error. HomEq timely appealed the belated grant, and Baker cross-appealed. On cross-appeal Baker raised the same issues from his deemed denied motion to correct error. *HomEq*, 883 N.E.2d at 96. We held that the *Cavinder* holding prohibited us from reviewing the issue raised by Baker on cross-appeal. Specifically, our court held that the motion to correct error was deemed denied thirty days after the hearing and that Baker's appeal was untimely because it was initiated only on cross-appeal, which had been filed more than thirty days after the deemed denied date. *Id.* at 96.

Our Supreme Court reversed and allowed Baker's cross-appeal to proceed under the following reasoning. Trial Rule 53.3(A) requires the appeal of a deemed denied motion to correct error to "be initiated by filing the notice of appeal under Appellate Rule 9(A) within thirty (30) days after the Motion to Correct Error is deemed denied." *Id.* at 96–97. Where the proponent fails to file such appeal, the "proponent cannot by cross-appeal later raise the issues presented by its motion to correct error." *Id.* (citing *Cavinder*, 726 N.E.2d at 289).

> This second aspect of the rule was subjected to [the Footnote 4] limited exception, however, in circumstances when a trial court belatedly grants a motion to correct error before the expiration of the time within which the proponent of the motion may appeal the merits [of the deemed denied] motion to correct error. . . .

*Id.* at 97 (citation omitted). The Supreme Court further explained that the Footnote 4 exception:

> recognizes the probable correctness of a trial court's decision modifying its own previous ruling and permits the proponent of the belatedly-granted motion to delay initiating a possibly unnecessary appeal until ascertaining whether the opponent of the motion chooses to acquiesce in the belated ruling. If the opponent appeals, however, seeking to invoke the "deemed denied" provision of T.R. 53.3(A), the proponent may then by cross-appeal seek appellate review of the merits of its motion to correct error.

*Id.*

The timing of the trial court's belated grant in *HomEq* plus the proponent's cross-appeal—the factor missing in *Garrison*—caused the case to fall squarely within the Footnote 4 exception. As such, our Supreme Court analyzed the case as follows:

> The trial court had timely scheduled a hearing for the motion to correct error, but it failed to rule within thirty days after the hearing. The motion was thus deemed denied pursuant to T.R. 53.3(A), and the defendants had thirty days to initiate an appeal of the deemed denial. Just eight days into that period, however, the trial court belatedly granted the motion to correct error. The footnote 4 exception thus permitted the defendants to initially forego commencing an appeal to see if the plaintiff would agree with the merits of the trial court's belated ruling and choose not to assert its invalidity on grounds of tardiness. When, to the contrary, the plaintiff brought this appeal, the defendants were entitled to proceed by cross-appeal to obtain appellate review of the merits of the issues raised in the motion to correct error.

*Id.* at 97.

### D. Reconciling the Case Law

While seemingly inconsistent, *Cavinder, Garrison,* and *HomEq* can be reconciled.

In *Cavinder*, the proponent of the motion to correct error timely appealed the deemed denial. This action, which triggered Scenario 1, allowed the proponent to file a cross-appeal to the opponent's appeal of the belated grant notwithstanding the fact that the belated grant had been entered more than thirty days after the deemed denial.

In both *Garrison* and *HomEq*, the proponents did not timely appeal the deemed denial of their motion to correct error. Absent such appeal, Scenario 1 could not apply. Therefore, in order to raise again the issues first raised in the deemed denied motion to correct error, the *Garrison* and *HomEq* proponents had to qualify for the Footnote 4 exception of Scenario 2. Scenario 2 is triggered by two factors. First, the trial court's belated grant must be entered "before the party filing the motion to correct error initiates an appeal but during the time period within which such party is entitled to appeal from the deemed denial." *Cavinder*, 726 N.E.2d at 289 n. 4. This first requirement was satisfied in both *Garrison* and *HomEq*.

The Footnote 4 exception "thus permitted the [proponent] to initially forego commencing an appeal to see if the [opponent] would agree with the merits of the trial court's belated ruling and choose not to assert its invalidity on grounds of tardiness." *HomEq*, 883 N.E.2d at 97. "When, to the contrary, the [opponent] brought [an] appeal, the [proponent was] entitled to proceed by cross-appeal to obtain appellate review of the merits of the issues raised in the motion to correct error." *Id.* This cross-appeal is the second condition that must be met in order to qualify for the Scenario 2 exception.

The facts of *Garrison* and *HomEq* diverge as to this second factor. In *HomEq*, the proponent, Baker, cross-appealed. Because this satisfied the requirements of Scenario 2, Baker could again bring before the court issues from his motion to correct error. By contrast, the *Garrison* proponent, Metcalf, did not cross-appeal and, therefore, did not fall within Scenario 2.[11]

■ The instant case presents facts identical to those in *HomEq*. On August 25, 2008, the trial court entered an order declaring, in part, that Essex had insurance coverage for, and a duty to defend, the claims asserted by the Estate against Kane for Kane's own negligence. Essex filed a motion to correct error on September 23, 2008, and the trial court held a hearing on December 9, 2008. No ruling came within thirty days and the motion was deemed denied on January 8, 2009. Essex did not appeal the deemed denial. Prior to Essex's February 7, 2009 deadline for appealing the deemed denial, the trial court belatedly granted Essex's motion to correct error finding that Essex did not have a duty to insure or defend either Wurster or Kane.

Wurster appealed, claiming that the Belated Grant was invalid pursuant to our Supreme Court's reasoning in *Garrison*. Essex cross-appealed, raising the same issues it had raised in its motion to correct error. Citing to our Supreme Court's reasoning in *HomEq*, Essex contends that it has the right to assert cross-error on the issues presented in its "deemed denied" motion to correct error. We agree.

### III. Essex's Cross–Appeal for Summary Judgment

Finding as we do that Essex may cross-appeal, we now address whether the trial

11. While Metcalf had argued on appeal that the trial court's belated grant of his motion to correct error stood on the authority of the Supreme Court's decision in *Cavinder*, this argument failed because, as noted above, *Cavinder* was decided under Scenario 1—a scenario that did not apply to the *Garrison* facts.

court erred in denying Essex's motion for summary judgment as to Kane. Our standard of review for a trial court's grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001); *MacGill v. Reid*, 850 N.E.2d 926, 928 (Ind.Ct.App.2006). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *MacGill*, 850 N.E.2d at 928. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.*

On cross-appeal, Essex raises the same issue addressed in its motion to correct error, *i.e.*, whether the trial court erred in failing to declare as a matter of law that Essex owes no duty of coverage and no duty to defend Kane in connection with the Estate's suit. The following are the undisputed facts that are pertinent to this issue.

Wurster was under contract to perform construction work on the Project. In 2003, Wurster entered into a subcontract with Kane to perform a portion of Wurster's construction work on the project. On May 29, 2003 Kane assigned its performance under that subcontract to Main Street. *Appellee's App.* at 126. King was an employee of Main Street and was working on the Project at the time he sustained his fatal injuries.

In October 2003, Essex issued a commercial general liability policy to Kane, as the "Named Insured," for the policy period of October 6, 2003 to October 6, 2004. The relevant language of the Initial Policy was set forth in endorsement numbered M/E–001 (4/00), and provided:

8. If you are a contractor, builder or developer, there is no coverage under this policy for:

. . . .

(2) "Bodily injury," "personal liability," or "property damage" *sustained by any independent contractor/subcontractor, or any employee, leased worker, temporary or volunteer help of same, unless a Named Insured or employee of Named Insured is on site,* at the time of the injury or damage, *and the Named Insured's actions or inactions are the direct cause of the injury* or damage, or the injury or damage is directly caused by an employee of the Named Insured.

. . . .

10. Duty to Defend: Where there is no coverage under this policy, there is no duty to defend.

*Id.* at 26 (emphasis added).

In the fall of 2004, the Initial Policy was revised and renewed ("Renewed Policy"), and contained the following language:

Forms and endorsements . . . made part of this policy at time of issue:

011–1024/3 (03–95), 011–1009 (07–80), ME–065 (04–99), ME–067 (04–99), ME–102 (04–99), CG 00 57 (09–99).

All other forms remain from the previous policy.

*Id.* at 63. Form 011–1009 (7–80), in turn, required the Renewed Policy to contain the following changes: "Item # 8 on form ME–001(04–98) [paragraph 8 above] is deleted and replaced by Forms M/E–065 (04/99), M/E–067 (04/99) and M/E–102 (04/00)." *Id.* at 64.

Of the three provisions, only ME–065 (04/99) ("M/E–065") is pertinent to this appeal. That endorsement provides:

The coverage under this policy does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage *sustained by any employee of an independent contractor* contracted by you or on your behalf.

*Appellee's App.* at 67 (emphasis added).[12] Paragraph 10 of M/E–001 (4/00) ("Paragraph 10"), which conditioned Essex's duty to defend an insured on that insured having valid coverage under the policy, remained in effect at the time of King's death. *Id.* at 63, 66. In December 2004, Wurster was added to the Renewed Policy as "an additional insured" pursuant to endorsement M/E–009 (4/99). *Appellee's App.* at 81.

Essex contends that the trial court erred in allowing its motion to correct error to be deemed denied—which denial effectively preserved the trial court's 2008 Order and its finding that Essex owed Kane a duty to indemnify and defend Kane in any suit filed by the Estate. Specifically, Essex asserts that the trial court should have concluded as a matter of law that M/E–065 and Paragraph 10 exclude Essex from having to defend or insure Kane against the injuries sustained by King while working for Kane's subcontractor, Main Street. Essex alleges that under the plain meaning of ME–065 and Paragraph 10, it has no duty to defend or to provide coverage for either Kane or Wurster in connection with claims arising from King's injuries.

We address Essex's duty as to both Wurster and Kane for the following reasons. In the 2008 Order, the trial court

granted summary judgment to Essex as against Wurster after finding that Essex had no duty to defend or indemnify Wurster for Wurster's own negligence. In that Order, however, the trial court did not address the issue of whether Essex had a duty to defend or indemnify Wurster under a theory of vicarious liability. Wurster filed a motion for clarification as to that question. In the Belated Grant, the trial court determined that Wurster's petition requesting clarification was "appropriate as a request for ruling as opposed to a motion to correct error." *Appellant's Br.* at 19. The trial court, accordingly, corrected its "prior error and clarifie[d]" that under Essex's Renewed Policy, Essex had no obligation to defend or indemnify Kane or Wurster in any suit prosecuted or for any judgment obtained by the Estate. We therefore address Essex's duties as to both Kane and Wurster.

▬ Insurance policies are governed by the same rules of construction as other contracts. *Briles v. Wausau Ins. Cos.,* 858 N.E.2d 208, 213 (Ind.Ct.App.2006) (citing *Gregg v. Cooper,* 812 N.E.2d 210, 215 (Ind. Ct.App.2004), *trans. denied* ). As with other contracts, their interpretation is a question of law. *Briles,* 858 N.E.2d at 213. When interpreting an insurance policy, the goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. *Id.*

▬ Insurance carriers have the liberty to limit their coverage provided that the exclusions are clearly expressed in unmistakable terms that particular losses are

---

**12.** Neither M/E–067 (4/99) nor M/E–102 (4/99) pertains to the facts of this case. M/E–067 (4/99) provided that coverage under the policy does not apply to bodily injury to an employee. King was not an employee of Kane, the "Named Insured." M/E–102 (4/99) provided that coverage under the policy does not apply to bodily injury *"arising out of acts*

of independent contractors and/or subcontractors. . . ." *Appellant's App.* at 71 (emphasis added). King's injuries are not alleged to have "arise[n] out of acts *of* the independent contractor," instead, as described in M/E–065, King's injuries were *"sustained by* [an] employee of an independent contractor." *Appellee's App.* at 68, 71.

excluded. *Jackson v. Jones,* 804 N.E.2d 155, 158 (Ind.Ct.App.2004). Renewed Policy exclusions M/E–065 and Paragraph 10 clearly meet these requirements.

■ Wurster, however, contends that there is a genuine issue of material fact as to whether these endorsements apply to the Renewed Policy. Wurster contends that the Initial Policy did not contain M/E–065, and because Kane did not know about the addition of M/E–065, Kane should not be bound by that endorsement. Wurster further maintains that Kane never got a copy of the Renewed Policy, and even if it had, it should be relieved of its terms because an "insurance contract is detailed and complex," and an insured cannot "gain more knowledge than he [had before reading it] because of the technical language...." *Appellant's Reply Br.* at 13. Wurster contends that Walker acted on behalf of Essex, and therefore, the knowledge of the terms of the Renewed Policy cannot be imputed to Kane.

Our Supreme Court recently discussed the meaning of the term "insurance agent" as follows:

> The term "insurance agent" is often used loosely. But because the term invokes agency principles, we must identify the principal for whom the insurance intermediary is an agent. "A party who negotiates an insurance contract to cover someone else's risk is acting as an agent for either the insured or the insurer." Depending on whose interests the "insurance agent" is representing, he or she may be a "broker" or an "agent." A critical distinction exists. A representative of the insured is known as an "insurance broker." As a general rule, a broker is the agent of the insured, and not the insurer. As such the insurer is not liable for the broker's tortious conduct. A broker represents the insured by acting as an intermediary between the insured and the insurer, soliciting insurance from the public under no employment from any special company, and, upon securing an order, places it with a company selected by the insured, or if the insured has no preference, with a company selected by the broker. In contrast, an "insurance agent" represents an insurer under an employment agreement by the insurance company. Unlike acts of a broker, "acts of an [insurance] agent are imputable to the insurer." Whether an insurance intermediary is an agent of the insured or the insurer is fact sensitive and includes consideration of "the facts and circumstances of the case, the relation of the parties, their actions, their usual course of dealing, any instructions given to the person by the company, the conduct of the parties generally, and the nature of the transaction."

*Estate of Mintz v. Connecticut Gen. Life Ins. Co.,* 905 N.E.2d 994, 1000–01 (Ind. 2009) (citations omitted).

The question of whether an intermediary is an agent—*i.e.,* working with the insurer—or a broker—*i.e.,* working with the insured—is a fact-sensitive determination. Here, that determination weighs in favor of Walker being Kane's broker. The designated evidence contains the affidavit and deposition of John Kane ("John"). In his deposition, John asserted that he had dealt with Walker for more than fifteen years. *Appellees' App.* at 196. He also stated that he could never get a straight answer from Walker regarding his coverage, "That's why I changed agencies." *Id.* at 200. John's affidavit contained the following:

> I do not recall ever having received, *from my agent* or from Essex Insurance Company, any copies of the 2004–2005 renewal policy, nor do I recall ever having received any communications re-

garding the substantial changes which were made in the renewal policy.... [H]ad I received a copy of the 2004–2005 renewal policy and/or the substantial changes which were made in that policy, or had I been advised of these substantial changes, I would immediately have notified *my insurance agency* that the changes were not acceptable and were not what I specifically requested.

*Appellant's Supp.App.* at 11 (emphasis added). Wurster did not designate any evidence to call into question John's statements that he considered Walker to be acting as Kane's broker.

■ Walker had the sole responsibility to procure for Kane the insurance Kane requested. "[A]n insurance agent or broker who undertakes to procure insurance for another is an agent of the proposed insured, and owes the proposed insured a duty to exercise reasonable care, skill, and good faith diligence in obtaining the insurance." *Brennan v. Hall*, 904 N.E.2d 383, 386 (Ind.Ct.App.2009) (citing *Stockberger v. Meridian Mut. Ins. Co.*, 182 Ind.App. 566, 395 N.E.2d 1272, 1279 (1979)). Essex set forth the amended terms of the Renewed Policy. *Appellee's App.* at 58, 59, 62. Thereafter, Essex owed no duty to Kane with respect to the insurance. *Appellee's Reply Br.* at 8. Once Walker, as Kane's broker, accepted the terms of the Renewed Policy, those terms could be imputed to Kane. *See Fed. Kemper Ins. Co. v. Brown*, 674 N.E.2d 1030, 1033 (Ind.Ct.

App.1997) (generally, law imputes [broker's] knowledge, acquired while acting within scope of agency, to principal, even if principal does not actually know what [broker] knows), *trans. denied.* Kane cannot now deny that it did not know of endorsement M/E–065.

■ M/E–065 of the Renewed Policy provides: "The coverage under this policy does not apply to 'bodily injury' ... or any injury, loss or damage sustained by any employee of an independent contractor contracted by you or on your behalf." *Appellee's App.* at 67. This provision applied equally to subcontractors of Kane and of Wurster. In contrast to paragraph 8 of M/E–001 (4/00) of the Initial Policy, M/E–065 of the Renewed Policy provides no condition under which Essex has a duty to cover the bodily injury sustained by an employee of an independent contractor. In paragraphs 12 and 13 of the 2008 Order, the trial court found that King was an employee of an independent contractor—Main Street. *Id.* at 210. As such, Essex had no duty to insure Kane for injuries sustained by King. By the same reasoning, Essex had no duty to insure Wurster for King's injuries. King was an employee of Kane's independent contractor; Kane, in turn, was Wurster's independent contractor. Absent Essex's duty to provide liability coverage to Kane or Wurster, Paragraph 10 also excluded Essex from having a duty to defend Kane or Wurster. *Id.* at 26.[13]

**13.** Wurster also claims that, although the Initial Policy was valid, endorsement M/E–065 (4/99) does not apply because there was no meeting of the minds between Kane and Essex in the formation of the Renewed Policy. A meeting of the minds of the contracting parties is essential to the formation of a contract. *Fox Dev., Inc. v. England*, 837 N.E.2d 161, 165 (Ind.Ct.App.2005). The failure to demonstrate an agreement on essential terms of a purported contract negates mutual assent

and hence there is no contract. *Wallem v. CLS Indus.*, 725 N.E.2d 880, 883 (Ind.Ct.App. 2000). Once the Initial Policy expired, the doctrine of lack of mutuality would not transfer insurance coverage from the Initial Policy to the Renewed Policy, it would only render the Renewed Policy null and void. *Id.* Wurster's contention of lack of mutuality does not create a genuine issue of material fact that precludes summary judgment in favor of Essex. A finding of no mutuality, instead,

Finding that the trial court's Belated Grant, dated January 27, 2009, was made void by the instant appeal, that order is vacated. On cross-appeal, the 2008 Order is reversed, and we remand with instructions to enter summary judgment in favor of Essex as against Kane and Wurster.

Reversed and remanded.

NAJAM, J., and BARNES, J., concur.

would support a grant of summary judgment in favor of Essex as against Wurster and Kane.