Heather SCHROCK, Appellant,

v.

Marion SCHROCK, Appellee/Cross–Appellant.

No. 20A03–1009–DR–484.

Court of Appeals of Indiana.

April 15, 2011.

Rehearing Denied June 1, 2011.

Perry D. Shilts, Fort Wayne, IN, Attorney for Appellant.

Rebecca Butler Power, Norman L. Burggraf, Jr., Butler Power Burggraf, P.C., Elkhart, IN, Attorneys for Appellee/Cross Appellant.

## OPINION

BROWN, Judge.

Heather Schrock ("Wife") appeals the trial court's belated order granting in part a motion to correct error by Marion Schrock ("Husband") and argues that the belated order is void. On cross-appeal, Husband seeks to obtain appellate review of the issues raised in his motion to correct error. For the reasons set forth below, we reverse the trial court's belated order, address Husband's issues on cross-appeal, and reverse in part and remand for further proceedings.

The parties were married in April 1997, and Wife filed a petition for dissolution in April 2008. The court held a trial during five days in October and November 2009 and took the cause under advisement. On February 10, 2010, the court entered an order of dissolution, which included findings that the marital estate included a liability to Schrock Excavating, Inc. and did not include a liability to Eagle Heating and Cooling Inc. ("Eagle") and awarded judgment in favor of Wife in the amount of $871,030.85.

On March 8, 2010, Wife filed a motion to correct error in which she argued in part that the court erred in its valuation of the obligation to Schrock Excavating. On March 12, 2010, Husband filed a motion to correct error in which he argued among other things that the court made a typographical error in the order and erred in excluding debt to Eagle as a marital obligation. On June 18, 2010, the court held a hearing on the motions to correct error.[1] Near the end of the hearing, the parties agreed that the trial court would have sixty days to rule on the motions to correct error.

On August 25, 2010, the court ruled on the motions to correct error, granting in part and denying in part both Husband's March 12, 2010 motion and Wife's March 8, 2010 motion. In particular, the court denied Wife's motion with respect to the debt to Schrock Excavating and granted Husband's motion with respect to the typographical error and the obligation to Eagle. On September 21, 2010, Wife filed a notice of appeal with respect to the trial court's August 25, 2010 ruling. In her appellant's brief, Wife contends that the trial court's belated August 25, 2010 order was void or a nullity. Husband by cross-appeal raises two of the issues presented in his motion to correct error.

### A. Challenge to Husband's Deemed Denied Motion to Correct Error

We first address whether Husband may seek appellate review of the issues raised in his motion to correct error. Wife argues that the court's belated August 25, 2010 ruling is void under Trial Rule 53.3(A) and that the February 10, 2010

---

1. On March 12, 2010, the court initially set the motions for hearing on April 29, 2010. Later, on April 20, 2010, by agreement of the parties the court rescheduled the hearing for June 18, 2010.

dissolution order remains in full force and effect. Husband argues that he is permitted to present to this court by cross-appeal those issues he raised in his motion to correct error.

The Indiana Supreme Court's opinions in *HomEq Servicing Corp. v. Baker*, 883 N.E.2d 95 (Ind.2008), and *Cavinder Elevators, Inc. v. Hall*, 726 N.E.2d 285, 289 (Ind.2000), discuss the ability of a party to obtain appellate review of the merits of issues raised in a motion to correct error which was deemed denied under certain circumstances.

Trial Rule 53.3(A) provides:

> In the event a court fails for forty-five (45) days to set a Motion to Correct Error for hearing, or fails to rule on a Motion to Correct Error within thirty (30) days after it was heard or forty-five (45) days after it was filed, if no hearing is required, the pending Motion to Correct Error shall be deemed denied. Any appeal shall be initiated by filing the notice of appeal under Appellate Rule 9(A) within thirty (30) days after the Motion to Correct Error is deemed denied.

When trial courts purport to grant a motion to correct error belatedly, that is, after the expiration of the thirty-day "deemed denied" deadline in the rule, the Indiana Supreme Court has recognized that issues arise regarding efficient judicial administration and fairness to litigants, including potential "unnecessary, impractical, harsh, and unfair consequences." *HomEq*, 883 N.E.2d at 96–97 (quoting *Cavinder Elevators*, 726 N.E.2d at 289).

■ As explained in *HomEq*, to address these problems, the Court in *Cavinder Elevators* adopted a two-part rule. *Id.* at 97. First, if the opponent of a motion to correct error fails to timely appeal a belated grant of the motion, such opponent cannot claim on appeal that the trial court violated the time deadlines in Trial Rule 53.3(A). *Id.* Second, if the proponent of the motion to correct error fails to timely appeal when it is deemed denied under Trial Rule 53.3(A), such proponent cannot by cross-appeal later raise the issues presented by its motion to correct error. *Id.* (citing *Cavinder Elevators*, 726 N.E.2d at 289). However, this second aspect of the rule "was subjected to a limited exception … in circumstances when a trial court belatedly grants a motion to correct error before the expiration of the time within which the proponent of the motion may appeal the merits" of the motion to correct error that is deemed denied under Trial Rule 53.3(A). *Id.* Footnote 4 of *Cavinder Elevators* states:

> If the trial court belatedly grants a motion to correct error before the party filing the motion to correct error initiates an appeal but during the time period within which such party is entitled to appeal from the deemed denial, the party may assert as cross-error the issues presented in its "deemed denied" motion to correct error.

726 N.E.2d at 289 n. 4.

In *HomEq*, the Court explained that "[t]his exception recognizes the probable correctness of a trial court's decision modifying its own previous ruling and permits the proponent of the belatedly-granted motion to delay initiating a possibly unnecessary appeal until ascertaining whether the opponent of the motion chooses to acquiesce in the belated ruling." 883 N.E.2d at 97. "If the opponent appeals, however, seeking to invoke the 'deemed denied' provision of [Trial Rule] 53.3(A), the proponent may then by cross-appeal seek appellate review of the merits of its motion to correct error." *Id.*

The Court applied this exception in *Ho-mEq* and found that the defendants "fell within the limited exception provided by footnote 4 [in *Cavinder Elevators* ]." *Id.* Specifically, in *HomEq* the trial court had timely scheduled a hearing for the motion to correct error, but it failed to rule within thirty days after the hearing. *Id.* Thus, the motion was deemed denied pursuant to Trial Rule 53.3(A), and the defendants had thirty days to initiate an appeal of the deemed denial. *Id.* However, eight days into that period, the trial court belatedly granted the motion to correct error. *Id.* The Court in *HomEq* concluded that "[t]he footnote 4 exception [in *Cavinder Elevators* ] thus permitted the defendants to initially forego commencing an appeal to see if the plaintiff would agree with the merits of the trial court's belated ruling and choose not to assert its invalidity on grounds of tardiness" and that "[w]hen, to the contrary, the plaintiff brought this ap-peal, the defendants were entitled to pro-ceed by cross-appeal to obtain appellate review of the merits of the issues raised in the motion to correct error." *Id.*

In this case, Husband is able to proceed by cross-appeal to obtain appellate review of the issues raised in his motion to correct error as set forth in footnote 4 of *Cavinder Elevators* and in *HomEq.* The trial court conducted a hearing on the parties' mo-tions to correct error on June 18, 2010. The parties agreed that the trial court would have sixty days to rule on the mo-tions.[2] The court did not rule on the motions within sixty days, and Husband's motion was deemed denied on August 17, 2010 (sixty days after the June 18, 2010 hearing). Neither party appealed the deemed denial. On August 25, 2010, the trial court issued its belated order ruling on the motions to correct error. However, the belated August 25, 2010 order was issued prior to the date thirty days after

---

2. Wife argues that the there was no stipula-tion or agreement under Trial Rule 53.3(B)(2) that the trial court had sixty days to rule on the motions to correct error. However, the following exchange occurred on the record:

> [Wife's Counsel]: ....Does the court be-lieve that it needs to state on the record today that it might need an additional thirty days as—I think 53.3 provides?
>
> \*   \*   \*   \*   \*   \*
>
> The Court: It may be just for everybody's comfort level if the court can request that the parties will grant the court 30 days from today to make any additional ruling with respect to the motion to correct er-ror.
> I will take it from your comments [Wife's Counsel] that the wife would agree to give the court that time, would the hus-band agree to that?
> [Husband's Counsel]: The husband would Your Honor.
> [Wife's Counsel]: And that's over and above the thirty provided.
> [Husband's Counsel]: Oh, so a total of 60?
> [Wife's Counsel]: Yes. If necessary.
> [Husband's Counsel]: Is that what you're—

> [Wife's Counsel]: Cause you have 30.
> The Court: I think I can get it done in 30, but if we'll make it for an additional 30 days then we'll know absolutely for sure that we'll be done and one of my interests other than not being lazy judged by the Indiana Supreme Court is that I don't want the next judge who receives it to come looking for me with a stick. (Laughter) Because figuring this one out is quite an undertaking. So with that I think we've completed our hearing and I'll let all of you go out and see if you're washed away by the rain today.
> [Wife's Counsel]: Thank you very much Your Honor.
> [Husband's Counsel]: Thank you Judge.

Transcript at 65–66. Based upon this ex-change, we conclude the parties agreed that the trial court had sixty days to rule on the motions to correct error. *See* Trial Rule 53.3(B) ("The time limitation for ruling on a motion to correct error established under Section (A) of this rule shall not apply where ... [t]he parties who have appeared or their counsel stipulate or agree on record that the time limitation for ruling set forth under Sec-tion (A) shall not apply").

August 17, 2010 and thus before the expiration of the time within which the proponent of the motion may appeal the merits of the motion to correct error that is deemed denied under Trial Rule 53.3(A). *See HomEq*, 883 N.E.2d at 97. Husband was permitted, at that stage, to "initially forego commencing an appeal" to see if Wife "would agree with the merits of the trial court's belated ruling and choose not to assert its invalidity on grounds of tardiness." *See id.* However, Wife did appeal the belated ruling and asserted that the order was invalid under Trial Rule 53.3(A). Husband then proceeded by cross-appeal to seek appellate review of the issues raised in his motion to correct error as permitted under *Cavinder Elevators* and *HomEq.*[3] *See Wurster Const. Co., Inc. v. Essex Ins. Co.*, 918 N.E.2d 666, 673–677 (Ind.Ct.App.2009) (applying *HomEq* and *Cavinder Elevators* and holding that the plaintiff/cross-appellant had the right to assert cross-error on the issues presented in its deemed denied motion to correct error where the cross-appellant did not appeal the deemed denial, the trial court's belated ruling granting the motion was issued prior to the cross-appellant's deadline for appealing the deemed denial, the cross-appellee appealed the belated grant claiming it was invalid, and the cross-appellant raised by cross-appeal the same issues it had raised in its motion to correct error). Accordingly, we will address those issues which Husband initially presented in his motion to correct error and now raises on cross-appeal.[4]

## B. Review of Issues Raised in Husband's Motion to Correct Error

We next address the issues raised by Husband on cross-appeal and in his motion to correct error. We review a challenge to the trial court's division of marital property for an abuse of discretion, and, in so doing, we consider the evidence most favorable to the trial court's disposition of the property without reweighing the evidence or assessing the credibility of witnesses. *Granzow v. Granzow*, 855 N.E.2d 680, 682–683 (Ind.Ct.App.2006). We will reverse only if the judgment is clearly against the logic and effect of facts before the court and the reasonable inferences drawn therefrom. *Id.* at 683.

Husband raises two issues addressed in his motion to correct error, namely, whether the court in the order of dissolution erred: (1) in making a numerical typographical error which affected the marital property distribution; and (2) in excluding a certain debt from the marital estate.

### 1. Typographical Error

■ Husband first argues that the court erred in making a typographical error

---

**3.** Indeed, the issues raised by Husband on cross-appeal here were first raised in his motion to correct error and the trial court granted Husband's motion with respect to these issues in its belated August 25, 2010 order.

**4.** In her reply brief of appellant/cross-appellee, Wife presents an argument related to an issue first raised in her motion to correct error related to the valuation of a debt to Schrock Excavating included in the marital estate. Wife did not appeal the deemed denial of her motion to correct error, and in its belated order the court did not grant Wife's motion with respect to the issue raised in paragraph 3 of her motion. The issue raised in Wife's reply brief does not fall within the limited exception provided by footnote 4 of *Cavinder Elevators* and applied in *HomEq*, and thus we do not review Wife's motion on that issue.

Wife also argues that Ind.Code § 31–15–7–9.1(a), which provides that "orders concerning property disposition entered under this chapter (or IC 31–1–11.5–9 before its repeal) may not be revoked or modified, except in case of fraud," prevents Husband from obtaining review by way of cross-appeal. We do not find Ind.Code § 31–15–7–9.1 applicable here due to the procedural posture of this case.

which affected the final property calculation. Husband argues that the parties stipulated to the value of Wife's debt and that the court adopted the stipulated value in the dissolution order, but that the court mistakenly changed the amount of Husband's credit "from the stipulated amount of $2,774,086.00 to $2,744,086.00." Appellee/Cross–Appellant's Brief at 15. Wife argues that, although there was a $30,000 error in the order regarding the net amount distributed to Husband, Husband was not harmed by the clerical error because the court did not consider the mistaken amounts in calculating or arriving at the property judgment owed to Wife. Wife also argues that the court used "[a]nother incorrect number" of $2,747,086 to calculate the judgment and that the judgment is "$1,000.87 less than what [she] would have received." Appellant/Cross–Appellee's Reply Brief at 16.

The record reveals that, in Partial Settlement Agreement # 3, the parties stipulated to a debt of $2,774,086 in connection with the purchase of 17,000 shares of Horizon Transport, Inc., stock by Husband from Ruth Ann Schrock (Husband's mother) and that Husband was to be credited for paying that amount. In the schedule of the parties' assets and liabilities on page 4 of the dissolution order, the court indicated a liability in the amount of $2,774,086 in connection with 17,000 shares of Horizon Transport. However, in assigning that liability to Husband, the schedule lists the amount of the liability as $2,744,086, which is $30,000 less than amount of the liability stipulated by the parties. Later on page 11 of the dissolution order, in addressing the Horizon Transport stock, the court noted that Husband owed his mother $2,747,086, which also incorrectly reflects the amount stipulated by the parties.

It appears that the trial court used the mistaken amount $2,744,086 in the division of the marital property. To the extent Wife argues that the court did not use the mistaken amounts in the calculation of the judgment, it is unclear from the record how the court arrived at the amount of the judgment.[5] We remand with instructions to determine whether the mistaken amounts included in the dissolution order were used to compute the award to Wife and, to the extent they were used, to revise the amount of the judgment to reflect the amount of the liability stipulated by the parties.

### 2. *Debt to Eagle Heating and Cooling Inc.*

■ Husband next argues that the court erred in excluding a debt to Eagle from the marital estate. With respect to the debt to Eagle, the dissolution order stated:

> The obligation to [Eagle], which is owned by Husband's brother, ... poses problems similar to those relative to the debt to Schrock Excavating.[6] The circumstances surrounding these obligations are rendered suspect by the apparent irregularities in invoices. The fact that the 24 invoices issued over a six month period support one of two inferences[:] [e]ither [Eagle] performed no work for customers other than HPC Properties LLC,[7] or the invoices were fabricated. It is clear from the evidence that Eagle [ ] did perform work for HPC Properties. What is not clear is whether

5. The court awarded a judgment to Wife in the amount of $871,030.85.

6. Schrock Excavating was a company owned by another of Husband's brothers.

7. HPC Properties LLC, in which Husband is the sole member, was a marital asset and owned a strip mall property called Elkhart Plaza.

that work was compensated by the general contractor. The burden of proving the legitimacy of this debt rests on the Husband. He has not met that burden. Appellee/Cross–Appellant's Appendix at 86–87.

Husband argues that "[t]he only evidence in the record indicates that the debt to Eagle was outstanding and *not* paid." Appellee/Cross–Appellant's Brief at 16. In support of his argument, Husband points to his testimony and the testimony of his accountant. Husband further argues that "[t]he record is devoid of any evidence that Eagle WAS paid." *Id.* at 17.

Wife argues that the court correctly excluded the alleged debt to Eagle and points to testimony that "twenty-three (23) sequentially-numbered invoices were issued on various dates throughout the passage of [a] five month block of time." Appellant/Cross–Appellee's Reply Brief at 19. Wife argues that the testimony of Husband's accountant indicated he "believed there was a general contract relationship between [Eagle and] Cardinal Builders, who was performing all of the work on the project, and that [Eagle] presumably would have been paid by that general contractor." *Id.* at 21. Wife further argues that Husband introduced no evidence to explain the sequentially-numbered invoices, Husband could have called his brother who created the questionable invoices, and Husband's brother was originally listed as a witness but did not testify. In addition, Wife argues that the trial court overvalued the amount of the debt and the evidence shows that, applying alternative interest rates of 3.57 and eight percent to discount the amount of the debt

of $733,000 to be paid in 2017, the present value of the debt is either $538,000 or $338,000, respectively.

The record reveals that evidence supports the trial court's finding that Eagle did perform work for HPC Properties LLC ("HPC"), including testimony by Husband that he hired Eagle to do air conditioning and heating work and by Husband's accountant that he observed obvious improvements to the mall property which included new duct work. Husband testified that Eagle "replaced the entire heating and cooling system for 80 percent of the plaza" and that the plaza was "105 thousand square feet." Trial Transcript Vol. III at 532. Husband testified that Eagle replaced "28 roof air units" and "all new duct work in the areas that they did." *Id.* HPC and Eagle entered into a debt repayment agreement dated May 4, 2007, pursuant to which HPC would pay Eagle for any work completed, that any sums remaining due or owing as of December 31, 2017 shall be due and payable, and that interest on the accumulated debt shall be waived unless HPC defaults on payment by December 31, 2017. The record includes invoices prepared by Eagle in connection with the work for HPC and a schedule summarizing the dates and amounts of the invoices.[8] The record also includes a copy of a real estate mortgage, executed on August 31, 2009, by HPC in favor of Eagle and recorded in the records of the Elkhart County Recorder to secure payment of the debt associated with Eagle's work.[9]

However, to the extent that the court found that Husband did not present evidence that the work by Eagle had not

8. The invoices in the record were issued from May 1, 2007 through December 30, 2007.

9. The May 4, 2007 debt repayment agreement provided in part that if at any time or for any

reason Eagle "feels unsecured," Eagle may "exercise the right to lien or mortgage the property ... until the debt is fully satisfied." Trial Exhibit 28.

been compensated, the record reveals otherwise. Husband testified that, as of April 16, 2008, HPC owed Eagle a balance of $733,000 for work it had completed. Husband also indicated that the balance owed was "for work done solely to the HPC shopping center." *Id.* at 533. In addition, the schedule summarizing Eagle's invoices was admitted into evidence as an exhibit and showed an outstanding balance of $733,000. Husband's accountant also testified that there were "[n]o payments to Eagle Heating and Air Conditioning." Trial Transcript Vol. II at 300. Further, while Wife points to testimony that there was a "general contract relationship" with Cardinal Builders for the work performed at the mall property, Wife does not point to evidence to show that Cardinal in fact paid or was required to pay all of the invoices issued by Eagle or that HPC was not obligated to pay Eagle the outstanding debt balance. The debt repayment agreement entered into by HPC and Eagle and the mortgage given by HPC to Eagle to secure payment indicate that HPC was directly liable to Eagle for any outstanding debt. We conclude that there was some outstanding debt to Eagle in connection with its work on the mall property owned by HPC and that the outstanding debt should have been included in the marital estate. Given that the trial court did not make any findings regarding the amount of that debt, we remand for a determination of the amount of HPC's or Husband's outstanding debt to Eagle, including any necessary consideration of the legitimacy of the invoices and the extent, if any, to which the debt should be discounted, and to modify the amount of the final judgment accordingly.

Finding that the trial court's belated order, dated August 25, 2010, was made void by the instant appeal, that order is vacated. On cross-appeal, the order of dissolution is reversed in part, and we remand to determine the effect of the typographical errors in the dissolution order and the amount of any outstanding debt to Eagle, to modify as necessary the amount of the final judgment, and to enter an order and any entries necessary to revise the dissolution order consistent with this opinion and the court's findings on remand.

Reversed in part and remanded.

ROBB, C.J., and RILEY, J., concur.